THE WYANDOTTE STATE BANK, *Appellee, v.* A. J. MUR-
RAY *et al., Appellees,* and J. H. COHEN, *Appellant.*

No. 16,972.

SYLLABUS BY THE COURT.

1. DISTRICT COURT—*Separate Divisions—Jurisdiction.* Chapter
112 of the Laws of 1909 provides that in case of sickness or
absence or disqualification of the judge of any division of the
district court the judge of either of the other divisions may
hold court in place of such absent or disqualified judge, and
do and perform any act or duty pertaining to such division.
A foreclosure was had in division No. 1 and motions to con-
firm and set aside the sale were filed in division No. 2, the
judge of division No. 1 being absent from the state. The
judge of division No. 2 granted the motion to confirm and
denied the motions to set aside. Thereafter application was
made to the judge of division No. 1, upon his return to the
state, to set these orders aside, which he did before the expi-
ration of the term during which they had been made. At the
succeeding term the judge of division No. 1 set the sale aside.
All the parties were present in person or by counsel, or both,
in division No. 2 when the orders were there made, and these
orders were set aside in division No. 1 upon the same evi-
dence. *Held,* that as to the sole question of jurisdiction, the
judge of each division had authority to rule as he did.

2. ——— *Propriety of Judge of One Division Reviewing Orders
of Judge of Another Division.* It is essential to the har-
monious and orderly administration of justice in courts con-
sisting of two or more divisions, under the act referred to,
that care be used to preserve proper respect and deference
between the judges, and that they refrain from reviewing or
reversing one another's orders or proceedings unless for some
good reason.

3. JUDICIAL SALES—*Confirmation—Judicial Discretion.* Under
section 500 of the code, requiring the court to confirm a sale
if it finds the proceedings regular and in conformity with law
and equity, the trial court has substantially the discretion of
a chancellor in a suit in equity, and may, although the pro-
ceedings be regular, set aside a sale when to confirm it would
permit inequitable and unfair practices or conduct to be re-
warded at the expense of one who has been fair and honest.

Appeal from Wyandotte district court. Opinion filed
April 8, 1911. Modified.

*Horace M. Baldwin,* and *A. L. Berger,* for the appellant.

*Paul S. Conwell,* and *W. G. Holt,* for the appellees.

The opinion of the court was delivered by

WEST, J.: Murray and wife mortgaged three pieces of property to the Wyandotte State Bank, and the mortgage was foreclosed June 22, 1909. July 1, 1909, an order of sale was issued, the sale was had on August 9, 1909, and the property purchased by Cohen. The next day the bank filed a motion to confirm the sale, and on August 24 Cohen filed a similar motion. August 21 Murray and wife and Donovitz and wife, Donovitz having purchased one of the properties shortly after the mortgage was given, filed motions to set the sale aside.

The foreclosure was had in division No. 1 of the Wyandotte district court, before Judge Fischer. He being out of the state, the clerk docketed these motions in division No. 2, presided over by Judge True. August 25 Judge True denied the motions to set aside, without prejudice to the rights of the movers to set up the same facts in any equitable proceeding they might thereafter institute, having allowed the motions to confirm on the day previous. All the parties were present in person or by counsel, or both, when the motions were heard, and voluminous affidavits were filed and considered. Certain other motions filed and afterward withdrawn have no bearing on the issues here and need not be considered.

After his return to the state, on September 10, 1909, during the same term in which Judge True had acted, Judge Fischer, in division No. 1, set aside all the rulings made by Judge True, stating as a ground therefor that Judge True was without jurisdiction to make the orders, application for such ruling having been made in division No. 1 by the appellees. On October 30, 1909, Judge Fischer refused to revoke his order of

revocation, and he set the sale aside on condition that Donovitz and wife and Mrs. Murray pay the costs within five days, which was done. It appears that Judge Fischer acted upon the same evidence which was considered by Judge True, making exactly the opposite ruling. It was and is claimed by the appellees that the order of sale directed that the three properties be sold separately, and that there was collusion and unfairness in the conduct of the sale and that the properties were wrongfully sold in bulk. The order in fact directed the properties to be offered separately, but did not direct them to be sold separately, and the return and affidavit of the undersheriff who made the sale show that he was unable to get bids for the separate properties and therefore sold them together. There is some indication of unfairness and collusion, but the majority of the court think this is substantially overcome by countervailing proof.

Out of the labyrinth of facts and details presented and argued the following questions emerge and require answers: (1) Did Judge True have jurisdiction? (2) Did Judge Fischer have jurisdiction? (3) Did the latter commit reversible error in setting aside Judge True's orders? (4) Did he commit reversible error in setting aside the sale? Of these in their order:

Chapter 112 of the Laws of 1909 (Gen. Stat. 1909, §§ 2445-2458) provides that the district courts of all counties having, or hereafter acquiring, a population exceeding 100,000 inhabitants shall consist of two or more divisions, each to be known as the district court, division No. —, each being given a separate number, in the order of their creation. Section 2447 of the General Statutes provides:

"In case of sickness, or absence or disqualification of the judge of any division, the judge of either of the other divisions may hold court in place of such absent or disqualified judge, and do and perform any act or duty pertaining to such division."

Section 2448 provides that all the powers of appointment not provided for in the act but delegated by law to the judge of the district court shall be exercised jointly by the judges of the divisions or a majority thereof, provided that in all cases pending, and in proceedings before any division or the judge thereof, the appointment of appraisers, receivers, referees and other appointments with reference to such cases or proceedings shall be made by the judge of such division.

By other sections the clerk is required to docket cases in rotation in the several divisions, in the order in which they are filed; in cases of indirect contempt the judge of either division may hear, determine and punish for the violation of any judgment, order or decree issued in the district court or any division thereof; changes of venue may be taken from one division to another, and cases may be assigned or transferred for hearing or trial from one division to another; all jurors drawn for service in the district court are eligible to serve in any division thereof.

These provisions make it plain that it is in all respects one court, whether consisting of one division or more than one. The proviso to section 2448 manifestly refers to appointments of appraisers and the like, but not to orders of sale after decree of foreclosure, because, whoever makes the order, it must be directed to the sheriff, and there is nothing akin to an appointment about it. By the clearest statutory direction the judge of one division is authorized to preside when the judge of the other division is absent, sick or disqualified. It seems entirely clear, therefore, that Judge True had jurisdiction to make the orders. It can not be seriously questioned, either, that during the same term Judge Fischer had jurisdiction to set aside these orders, the same as if they had been his own. Let it be understood that we are now discussing jurisdiction, not discretion, propriety or judicial comity. It would have been perfectly proper for Judge True to

defer hearing the matters and to order the motions docketed in the other division, unless there was some good reason why a speedy hearing should be had, but he was judge of the district court, the only one then in the district, and his jurisdiction to hear and decide the motions was full and complete. When Judge Fischer returned and learned of the condition he might well have declined to set aside Judge True's orders, even though he felt that they should have been first considered by the judge who had tried the case; but whatever his reason may have been, we fail to see wherein he lacked jurisdiction to reassume control of the matter and put it back where it was before the transfer to the other division. It is essential to the harmonious and orderly administration of justice that in courts consisting of two or more divisions care be used to preserve proper respect and deference between the judges, and that they refrain from reviewing or reversing one another's orders or proceedings unless for some good reason. (*Ryle v. Harrington*, [N. Y.] 14 How. Pr. 59; *Marvin v. Weider*, 31 Neb. 774; *Nancy Harris, &c., v. Ralph Clark and others, &c.*, [N. Y.] 10 How. Pr. 415; *Platt v. N. Y. & Sea Beach Ry. Co.*, 170 N. Y. 451; *Bank v. Jennings*, 4 N. Dak. 228; *Edwards v. James*, 13 Tex. 52; *Adams v. Spangler*, 17 Fed. 133.)

It is urged that Judge Fischer's order setting aside the sale was erroneous in view of the showing made as to its regularity, and that the court has little or no discretion to set aside a sale regularly made. Prior to 1893 the statute required confirmation when the sale had in all respects been made "in conformity to the provisions of this article." (Gen. Stat. 1868, ch. 80, § 458, Gen. Stat. 1889, § 4556.) But the legislature of 1893 amended this section and provided that the sale shall be confirmed if the court "finds the proceedings regular and in conformity with law and equity." (Laws 1893, ch. 109, § 26, Code 1909, § 500.)

"Whether the sale should be confirmed is a matter within the sound equitable discretion of the court; but

Bank v. Murray.

it is a discretion that must be exercised reasonably and not arbitrarily, and if abused is subject to review on appeal. The sale must appear to be in all essential respects fair and proper or it will not be confirmed, and the simple fact that confirmation would sacrifice the interests of those entitled to the protection of the court is sufficient ground for a refusal to confirm. The court will not, however, be astute to find objections, and if there is no evidence of unfairness, deception or impropriety the sale is properly confirmed. Even though there have been irregularities, if the court can give a good title, and it is to the interest of the parties to confirm the sale, it will be confirmed, and the purchaser compelled to complete his purchase. Mere lapse of time will not prevent confirmation. It is not a matter of course to open the biddings upon an offer of a larger bid." (24 Cyc. 34.)

In *Cocks v. Izerd*, (74 U. S.) 7 Wall. 559, Mr. Justice Davis said:

"The law will not tolerate any influences likely to prevent competition at a judicial sale, and it accords to every debtor the chance for a fair sale and full price; and if he fails to get these, in consequence of the wrongful interference of another party who has purchased his property at a price greatly disproportioned to its value, equity will step in and afford redress, either by setting aside the proceedings under the sale or by holding the purchaser to account." (p. 562.)

Section 631 of the second edition of Gibson's Suits in Chancery thus states the rule in equity cases:

"A party may have a sale set aside whenever the property has not sold for a fair price, and there has been: (1) some failure of the master to advertise the land properly; or (2) to sell at the right time or at the right place; or (3) the master has been guilty of some other misconduct or irregularity injurious to the sale; or (4) the purchaser has been guilty of some misconduct tending to diminish the price or discourage bidding; or (5) others have been guilty of combinations or other acts injuriously affecting the sale; or (6) the weather was so exceedingly inclement, or the waters so high, or in some other way bidders were prevented or deterred from attending the sale; or (7) for some

34—84 KAN.

other reason, not the fault of the party complaining, a fair sale was not had. Mere inadequacy of price, however, without more, will not justify a court in setting aside a sale, unless an advance bid be tendered. The only test a court can have of the value of property sold at a forced sale is the price it will bring, on due notice, at a public sale fairly conducted.

"If the property has sold for so good a price that a resale would probably avail nothing, the court may disregard all irregularities in the sale, especially where persons under disability are concerned. The fullness of the price in such cases, however, should be made affirmatively to appear, by reference to the master or otherwise."

The general rule is that mere inadequacy of price, unless the inadequacy be so great as to shock the conscience, will not justify even a court of equity in setting a sale aside, but, while announcing this rule, the court in *Graffam v. Burgess,* 117 U. S. 180, said:

"Looking at the whole case, the traces of design on the part of Graffam to mislead the complainant, to lull her into security, and thus to prevent her from redeeming the property, are abundantly manifest, and such design must be assumed as an established fact. . . . As already perceived, we do not rest our conclusion alone upon the gross inadequacy of the consideration of the sale; but upon that, in connection with the unfair conduct of the defendant in taking advantage of the complainant's ignorance of the sale, and giving her no intelligible notice or intimation of it, or of his intended seizure of the property after the year of redemption had passed, but standing by and seeing her expend large sums of money upon it, even after the year had expired. This, we think, presents a case sufficiently strong to justify the action of the court below, at least to the extent to which it went in making the decree appealed from [allowing the owner to redeem]." (p. 190.)

In *Pewabic Mining Company v. Mason,* 145 U. S. 349, Mr. Justice Brewer said:

"It may be stated generally that there is a measure of discretion in a court of equity, both as to the manner

and conditions of such a sale, as well as to ordering or refusing a resale. The chancellor will always make such provisions for notice and other conditions as will in his judgment best protect the rights of all interested, and make the sale most profitable to all; and after a sale has once been made, he will, certainly before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted. Yet the purpose of the law is that the sale shall be final; and to insure reliance upon such sales, and induce biddings, it is essential that no sale be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining party prior thereto. And in this respect regard may properly be had to all that has transpired before, for the conduct of the parties, their acts and omissions, may largely interpret their action at the time of the sale." (p. 356.)

We think that under the present statute the trial court has substantially the discretion of a chancellor, and that, while a sale should not be set aside arbitrarily or capriciously, it may be set aside when to confirm would permit inequitable and unfair practices or conduct to be rewarded at the expense of one who has been fair and honest.

The entire evidence on which the trial court acted is before us as abstracted, and we may properly reach our own conclusions thereon. (*Armstrong v. Grant*, 7 Kan. 285; *Kansas Pacific R. Co. v. Butts*, 7 Kan. 308; *Moore v. Pye*, 10 Kan. 246.)

The judgment appears to have been for $3090, to bear eight per cent interest, for the unpaid taxes, if any, and the costs of sale and costs of the action. The bid of Cohen was $3198.99, but whether this covered the entire amount due we are not advised. It appearing that Donovitz and wife in their motion to set aside offered to have the judgment purchased for principal, interest and costs, or to give any guaranty the court might require that if a new sale be ordered they would bid on the property an amount sufficient to equal the judgment, interest and costs due at the time of sale,

we believe a case is presented for exercising some discretion, although the entire evidence might be held to justify confirmation only.

If Cohen can be assured of the property, or a return of his bid, with interest, he will be fairly well protected, and if Donovitz and wife desire to comply with reasonable conditions in order to set the sale aside it would seem equitable to give them an opportunity, for both the bidder and the owner of the foreclosed property should be protected, to the end that judicial sales may invite purchasers to offer, and enable owners to receive, a fair price.

The cause is therefore remanded with directions to confirm the sale unless within twenty days from receipt of the mandate the appellees or some of them deposit in court a sum of money equal to the amount of the judgment, costs and accruing costs, as a continuing bid for the property ordered sold; also, the costs in this court, and six per cent interest on Cohen's bid from the time it was paid to the sheriff, to be returned to him with the amount of his bid in case the sale is set aside; that if such deposit be so made the order setting the sale aside be affirmed, and that such further proceedings in accordance herewith be had as may be proper.

PORTER, J. (dissenting) : Whether the sale should be confirmed rests in the sound discretion of the court, but the discretion must be exercised upon equitable principles, not arbitrarily, and the ruling is always subject to review. The evidence for and against confirmation is all before us in the form of affidavits. On this evidence the judge of one division ordered the sale confirmed. The judge of the other division, without additional evidence, set the sale aside, for what reason the record does not show, but it is apparent that the principal reason must have been that the judge believed the judge of the other division had interfered

Bank v. Murray.

with his jurisdiction. It could hardly have been on the claim that there was collusion, deception or unfairness, because there was no evidence to support that claim, and the opinion of the majority does not proceed upon the theory that there was any impropriety in the conduct of the sale. The mere offer of a larger bid is not sufficient to authorize the court to refuse confirmation. (24 Cyc. 35.) Besides, the record does not disclose the offer of a higher bid. The amount of the judgment, with interest and costs to the date of the sale, August 9, 1909, was $3145.85. Cohen's bid was $3198.99, and the difference between this and the amount of the judgment would probably cover the costs of the sale. It appears that Donovitz and wife in their motion to set aside offered to have the property purchased for the amount of the judgment, interest and costs. But this is practically what the property brought at the sale. The objection I have to the opinion is that no rule is laid down, no precedent established to guide courts in the future. It is not stated what equitable grounds exist for setting the sale aside. Therefore the judgment should be reversed, with directions to set aside both orders made by Judge Fischer, so that the order made by Judge True confirming the sale will be permitted to stand.

I am authorized to say that Mr. Justice Burch and Mr. Justice West concur in this dissent.