Frances M. Fincham, *Appellee,* v. Arthur S. Fincham, *Appellant.*

No. 38,202

Frances M. Fincham, *Appellant,* v. Arthur S. Fincham, *Appellee.*

(231 P. 2d 232)

Opinion filed May 12, 1951.

*George Barrett,* of Pratt, and *W. D. Jochems,* of Wichita, argued the cause and *Omer Poos,* of Hillsboro, was with them on the briefs for the appellant in Case No. 38,164; *Paul R. Wunsch,* of Kingman, and *E. E. Sattgast,* of Wichita, argued the cause and *John Madden, Jr.,* was with them on the briefs for the appellant in Case No. 38,202.

*Paul R. Wunsch,* of Kingman, and *E. E. Sattgast,* of Wichita, argued the cause and *John Madden, Jr.,* was with them on the briefs for the appellee in Case No. 38,164; *George Barrett,* of Pratt, and *W. D. Jochems,* of Wichita, argued the cause and *Omer Poos,* of Hillsboro, was with them on the briefs for the appellee in Case No. 38,202.

The opinion of the court was delivered by

Smith, J.: This was an action for divorce and alimony. The appeal is by the defendant from an intermediary order.

The facts so far as they affect this appeal are as follows: Plaintiff began in Sedgwick county, Kansas, an action for divorce from her husband. In her petition she charged extreme cruelty and gross neglect of duty. She described land owned by defendant in five

Kansas counties and in Oklahoma and alleged he was worth in excess of $200,000 and that unless restrained he would dispose of it. On the date the petition was filed the trial court made an order restraining the defendant from disposing of his property and directing him to pay temporary support money and attorney fees in the amount of $500. The petition was filed on April 14, 1949, and a summons issued directed to the sheriff of Pratt county. The record discloses that the sheriff's return on this summons shows it was served on April 18, 1949, by leaving a copy in the mail box at his usual place of residence. A certified copy of the order for temporary support money was returned and filed with the summons. On June 1, 1949, counsel for defendant filed a motion to quash this service on the ground that at the time it was had and for a long time prior thereto and at the time the motion was filed defendant was a resident of Arkansas. On June 3, 1949, plaintiff commenced proceedings for service by publication by filing an affidavit that she was unable to obtain service on defendant in Kansas because he had departed the state and was residing at a given address in Arkansas. On the same date counsel for appellee caused a foreign summons to be issued for defendant to the sheriff of Garland county, Arkansas. The sheriff's return on this summons shows it was served on defendant on June 6, 1949. The publication notice specified the answer day as July 16, 1949. On April 16, 1949, notice of *lis pendens* was duly recorded in the five Kansas counties where the defendant owned the land. On June 17, 1949, affidavit in attachment was filed by the plaintiff and the sheriff's returns show all the lands described in the plaintiff's petition were attached. On June 29, 1949, on the application of the plaintiff a receiver for all defendant's land was appointed. On June 29, 1949, alias summons for defendant was issued to the sheriff of Pratt county. The return of the sheriff shows personal service on defendant on June 30, 1949.

In due time defendant answered setting up as a defense first a judgment in an action in the district court of Pratt county between these same parties, which he claimed was *res judicata* of any claims of defendant for alimony or any right, title or interest in his property. He also set up in his answer that he had on May 12, 1949, filed an action for divorce from plaintiff in Arkansas, service had been had on plaintiff and on July 5, 1949, an absolute decree of divorce had been granted him. He alleged that this judgment was *res judicata* of all issues raised by plaintiff in her petition.

The plaintiff replied denying that either one of the above proceedings were *res judicata* of her rights in this action.

The action proceeded to trial on its merits. The defendant introduced all the files in the Pratt county case showing the final judgment. Defendant then testified that he moved to Arkansas on January 10, 1944 and that he bought a house there and furnished it. There was then some testimony about defendant's property and some transactions with his children. He then offered in evidence authenticated copies of his divorce proceedings in Arkansas and the decree entered on July 5, 1949. Copies of sections of the Arkansas statutes were introduced. The files showed an affidavit sworn to by defendant in his action asking for a warning order in conformity with those statutes, the appointment of an attorney to defend for the plaintiff in this action, the receipt by her of a letter advising her of the action and finally the service on her, her nonappearance, that the plaintiff was a resident of Arkansas and the absolute decree of divorce.

The Arkansas action was brought on May 12, 1949, and he claims service on the defendant on that date. Final judgment was entered on July 5, 1949.

It will be noted the defense filed in this action in the district court of Sedgwick county was the Pratt county judgment and the Arkansas judgment. Naturally one of the important points raised at the trial was whether full faith and credit was to be given the Arkansas judgment. Or stated another way, was service had in the Arkansas action before good service was had in the Kansas action? Such being the case, the trial court after hearing the evidence wrote to counsel for both sides a letter in which the court pointed out the sequence of events about as they have been detailed, then stated:

"Therefore at the time the Arkansas decree was obtained, which did not cover any personal or property rights of the parties but only undertook to decree a divorce, there was an actual case pending in the State of Kansas. For that reason I do not believe there is any requirement for this Court to give full faith and credit to the Arkansas decree as such."

The trial court's letter then continued as follows:

"It has occurred to me that I do not have any showing made as to what the receiver has done in this matter in preserving the assets, neither do I have any particular request as to attorney fees, and since what I have above stated is my attitude on the Arkansas decree, such might be a sufficient final order to be appealable, and if counsel wishes to appeal that phase of it they would prefer to do that before any further decision on my part. What I have so

far submitted to you in the above opinion is merely a memorandum opinion and I am not at this time determining any alimony, attorney fees, receiver fees, or other cost and expense.

"I would like to hear from you regarding when you would like to present the matter of attorney fees and receiver fees and cost and expense. If you can agree on a date other than from the 1st to the 12th of May inclusive, I think I can arrange to hear you, unless counsel decides to appeal from the memorandum judgment above set out."

This letter was subsequently incorporated into the journal entry. The trial court made no other findings or conclusions and entered no further judgment. In due time the defendant filed a motion for a new trial because of abuse of discretion, erroneous rulings, decision contrary to the evidence, the court misinterpreted the evidence and disregarded the evidence. At the same time he filed a motion asking the trial court to set aside its finding that personal service was obtained on him. These motions were both overruled—hence this appeal.

The specifications of error are that the trial court erred in holding that the Arkansas decree was invalid and not entitled to be given full faith and credit.

The defendant states the question involved to be, should a district court in Kansas in a divorce action give full faith and credit to a decree of divorce given by a chancery court in Arkansas in an action between the same parties where the latter action was commenced and constructive service obtained after the filing of the Kansas action but before service of summons in the Kansas action and proceeded to judgment before the Kansas action was tried? Defendant then proceeds to answer the above question in the negative under the head of three different legal propositions.

We are confronted, however, at the outset with the question, whether the order from which the appeal was taken is appealable. Our jurisdiction to reverse, vacate or modify an order of the district court is found in G. S. 1949, 60-3302. That section provides, in part, as follows:

"The supreme court may reverse, vacate or modify any of the following orders of the district court or a judge thereof, or of any other court of record, except a probate court. First—A final order. Second—An order that discharges, vacates or modifies a provisional remedy; or that grants, refuses, vacates or modifies an injunction; or that grants or refuses a new trial; or that confirms or refuses to confirm the report of a referee; or that sustains or overrules a demurrer. Third—An order that involves the merits of an action, or some part thereof. Fourth—An order appointing a receiver, or any order refusing to revoke, modify or change any order appointing a receiver, but a

failure to appeal shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case."

If this order comes under any of these provisions it is the first one. Therefore, the question was this a final order? G. S. 1949, 60-3303, defines that term. That section provides, in part, as follows:

"A final order which may be vacated, modified or reversed as provided in this article is an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment."

A good question to ask is whether a decision by us on the appeal would end the progress of the cause or would further action be necessary. We know that if we should affirm the lower court further action would be necessary since the trial court has never passed on whether a divorce should be granted plaintiff nor has it made any disposition of the property rights of the parties. Just what would be the court's holding on these questions, we have no idea. What would be the effect if we should reverse the lower court? The answer to this question requires an examination of the letter incorporated in the journal entry. When we do this the conclusion is inescapable that what the court had in mind was that the service of summons in Pratt on April 18, 1949, where the sheriff's return was, that he had served it by leaving a copy at the usual place of residence of the defendant, was good service. The trial court in its letter proceeded to treat what happened after that date in Arkansas as of no consequence. No other questions seem to have been treated or considered by the trial court. In fact, the trial court in its letter expressly confined its ruling to that one matter. Granting for the sake of argument, but not deciding, that the trial court was wrong in such decision, there would still remain other questions to be decided before a final decision on the action could be reached. For instance, defendant argues that G. S. 1949, 60-1518, does not relieve the trial court from giving full faith and credit to the Arkansas judgment. This question is not treated in the letter of the trial court. Whether it was presented to the trial court we have no way of knowing, neither do we have any way of knowing what would have been the trial court's ruling had the question been presented. Another instance, defendant argues that G. S. 1949, 60-1518, violates Section 2 of Article IV of the Constitution of the United States. The question was never presented nor ruled on by

the trial court. For another instance, the plaintiff argues here that should we hold the trial court erred in its findings that the service of April 18, 1949, was good, still there were defects and failures in the constructive service in the Arkansas action sufficient to cause that judgment to be of no effect and not entitled to full faith and credit. These three questions would all remain in this action even should we reverse the lower court.

The order was but little more than would amount to a ruling on the introduction of evidence had plaintiff objected to the introduction of the proceeding and files in the Arkansas action. It was not a final order and, therefore, not appealable.

The appeal in Case No. 38,164 is dismissed.

The above disposes of the appeal in *Fincham v. Fincham*, No. 38,164.

There remains appeal No. 38,202 in the same action. That appeal is from an order discharging a receiver. The plaintiff had procured the appointment of a receiver. He performed some duties. Subsequently the defendant went into another division of the district court of Sedgwick county and obtained an order discharging him and terminating the receivership. The plaintiff has appealed from that order.

The application for the appointment of a receiver was made on June 29, 1949. It recited the facts concerning the defendant and his property about as they have been stated already in this opinion and that there was growing wheat on some of this land and unless a receiver was appointed defendant would convert it into money and take it out of Kansas.

A receiver was appointed on June 29, 1949. On October 4, 1949, the defendant filed a motion to discharge the receiver, alleging that proper notice had not been given, the order was procured wrongfully, maliciously and without sufficient cause, allegations in the application were untrue, the plaintiff's rights were protected and plaintiff knew it was impossible for defendant to remove his property from the state.

The trial court heard the application. The journal entry following this hearing recited that it had been stipulated in open court between the parties that the receiver be authorized to sell on the open market 445.86 bushels of wheat, which were in his possession, and the proceeds be deposited in a bank. The court further found that the defendant objected to the allowance of a receiver's fees or

expense; that the report of the receiver should be confirmed. The court further ordered that defendant pay plaintiff's attorney $500, sell the 445.86 bushels of wheat and the receiver be reimbursed for expenses in the amount of $166.72.

The divorce action was finally decided on May 31, 1950. On June 9, 1950, notice of appeal was filed. On June 21, 1950, an oral application to discharge the receiver was made by defendant. The judge who had tried the issues in the divorce case was absent and this motion to discharge was heard by the judge of another division.

Counsel for plaintiff were present at the hearing on this motion and pointed out that the case in chief had been appealed; that the judge who had heard the divorce action had specifically retained jurisdiction of the receivership. Counsel argued that as a matter of fact the judge hearing the motion to discharge the receiver was usurping the rights of the judge who appointed the receiver in the first place.

The hearing appears to have consisted mostly of a colloquy between the trial judge and counsel for both sides. At least no evidence is brought here. At its conclusion the trial court found that there is no reason why the said receivership should be continued and that said receivership be and the same is hereby terminated; and that said receiver heretofore appointed in the above entitled action be and he is hereby discharged and ordered to file his final report and final accounting with this court.

The plaintiff appealed. Her specifications of error are that the trial court erred in ruling on matters which had been specifically retained by another division, the appeal in case No. 38,164 from the judgment refusing full faith and credit to the Arkansas decree and from all other appealable orders divested the district court of jurisdiction to rule on the matter of the discharge of the receiver, the trial court, division No. 1, erred in usurping the authority of division No. 3, that the trial court's division No. 1, erred in discharging the receiver.

The plaintiff calls our attention here to G. S. 1949, 20-603 and 20-604. Those sections have to do with district courts in counties of 118,000 population where there are four divisions of the district court. They provide as follows:

"WHEN JUDGE ABSENT OR DISQUALIFIED. In case of sickness, or absence or disqualification of the judge of any division, the judge of either of the other divisions may hold court in place of such absent or disqualified judge, and do and perform any act or duty pertaining to such division." (G. S. 1949, 20-603)

"EXERCISE OF POWER OF APPOINTMENT. All powers of appointment, not herein provided for, which are delegated by law to the judge of the district court, shall be exercised jointly by the judges of the divisions, or a majority thereof: Provided, however, That in all cases pending and in proceedings before any division, or the judge thereof, the appointment of appraisers, receivers, referees and other appointments with reference to such cases or proceedings shall be made by the judge of such division." (G. S. 1949, 20-604)

Plaintiff also refers to rules promulgated by the judges of the four divisions of the district court in Sedgwick county. These are, in part, as follows:

"The Clerk of the Court shall docket all cases filed in his office by rotation in the several divisions of the court, in the order in which they are filed. (20-605 R. S. 1935).

"When a case is thus assigned, the judge to whom it is assigned shall have full charge of the case until the issues are made up, except during jury sessions, during which time preliminary and emergency matters shall be handled as hereinafter provided."

" . . .

"Other cases on the day's docket shall be assigned in order to the first civil jury division which may be free. Provided however, that in any case in which evidence shall have been previously introduced, followed by a dismissal by plaintiff without prejudice, and subsequent refiling of the case, the case as refiled shall be returned to the division in which it was once partly tried."

At the hearing of the motion to discharge the receiver there appears to have been no contention but that notice of *lis pendens* had been filed in five Kansas counties on 3,600 acres of wheat land belonging to defendant; that the receiver had $2,500 in rents; that defendant was in court for all purposes; that when the receiver was appointed defendant was out of the state and the only real necessity for a receiver was to harvest and sell the wheat crop of 1949. The trial court remarked at the time of the hearing of the motion to discharge that the above reasons for the receivership had ceased to exist.

The rule that the court, which starts out with the trial of a matter, must hear all motions and applications in it until the cause is finally concluded is not inflexible. There must of necessity be a provision for consideration by another court of emergency matters requiring attention when the judge of the division, who has been trying the matter, is not available. Such is contemplated by a part of rule 8 of the district court as follows:

"Motions and demurrers will be heard as follows: in Division No. 1 on the first and third Thursdays; in Division No. 2 on the first and third Fridays; in Division No. 3 on the second and fourth Thursdays and in Division No. 4 on

the second and fourth Fridays, of each month. Provided, however, that during the trial of jury cases all motions and demurrers will be heard on the above designated days by the preliminary or assignment judge, and in the months of July and August they will be heard by the preliminary judge."

The statement is made in the brief of defendant and not contradicted that on June 21, 1950, the judge of division No. 1 was acting as a preliminary judge of the district court of Sedgwick county. While the motion to discharge was an oral one and less notice than the rules required was served, it does not appear that counsel objected to the hearing on that account. A portion of G. S. 1949, 20-603, provides for hearings such as this. It is there provided that:

"In case of sickness, or absence or disqualification of the judge of any division, the judge of either of the other divisions may hold court in place of such absent or disqualified judge, and do and perform any act or duty pertaining to such division."

There seems to be no contention but that the judge of division No. 3 was absent, nor that the matter of the discharge of the receiver was an emergency matter. It was not a case of a litigant rushing into another division when the judge who had been hearing his matter was available. (See, also, *Bank v. Murray*, 84 Kan. 524, 114 Pac. 847.)

Plaintiff does not argue here his point that the appeal of the case in chief divested the trial court of jurisdiction to hear a motion to discharge the receiver. Suffice it to say, however, the appeal was not from any order with reference to the receiver. The general rule is laid down in 4 C. J. S Appeal and Error, Section 620, as follows:

" . . . In a case where the appointment of a receiver is a matter ancillary to the main proceedings, the court may, after appeal has been taken, hear and determine a motion for the discharge of the receiver; but if the appeal is from the decree appointing the receiver, the trial court cannot remove the receiver pending the appeal."

In view of the facts already set out in these two opinions that defendant has some $200,000 worth of land, against all of which a notice of *lis pendens* has been filed and that he is now subject to the jurisdiction of the district court of Sedgwick county, we cannot say the trial court abused its discretion in terminating the receivership.

The judgment in appeal No. 38,202 is affirmed.

THIELE, J., concurs in the result.