No. 42,669

CHARLES L. BROWN d/b/a EMBEE COMPANY, a Sole Proprietorship, *Appellant,* v. GENERAL DISTRIBUTORS, INC., a Corporation, *Appellee.*

(372 P. 2d 65)

Opinion filed June 9, 1962.

*Daniel M. Moyer,* of Wichita, argued the cause and was on the briefs for the appellant.

*Donald E. Lambdin,* of Wichita, argued the cause, and *Milton Zacharias, Kenneth H. Hiebsch, Richard A. Render, Albert L. Kamas, David G. Arst* and *J. Dwain Schmidt,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: The appellant-plaintiff brought an action against the appellee-defendant and alleged that in June, 1956, he had become a subcontractor to supply and install the plastic tile on the walls of 440 bathrooms in houses for military personnel at Fort Carson, Colorado. It is further alleged that plaintiff obtained oral quotation of prices for the plastic tile and the adhesive to apply it from the defendant's manager after advising him of the fact that both the tile and the adhesive would have to conform to Commercial Standard 168-50 by the government specifications as listed. Plaintiff received the contract in due time and purchased the tile and adhesive from defendant who furnished the required certificates and samples for the approval of the U. S. army engineers.

The tile and adhesive were delivered to Fort Carson and were installed in the bathrooms during the summer of 1957. By October, there was shown to be trouble with the tile in that large numbers were loosening and falling off. The contract with the government contained a guarantee for a period of one year. The representative of the contracting officer ordered that all the tile in

the 440 bathrooms be replaced, which the appellant was obligated to do and did at a cost of $15,565.70.

Plaintiff concludes in the petition that the adhesive was at fault in that it failed to be strong enough to hold the tile and allowed it to fall. Plaintiff asks judgment for the sum of $15,565.70, and other relief.

It may be noted from the above account of plaintiff's petition that there is no general statement as to the theory of the action. The trial court seems to have assumed that the action sounded in implied warranty.

After defendant filed its answer and plaintiff filed a reply, the case came to trial. Plaintiff introduced his evidence, after which the trial court sustained a demurrer to plaintiff's evidence.

It would appear that the trial court in sustaining the demurrer rested the decision upon *Oil Well Supply Co. v. Hopper*, 129 Kan. 300, 282 Pac. 701, and upon *Ehrsam v. Brown*, 76 Kan. 206, 91 Pac. 179. The rule of the Hopper and Ehrsam cases is stated in the first paragraph of the syllabus of the Ehrsam case, and reads as follows:

"Where a known, described and specified article is sold by a dealer under a contract to be executed by delivery of the specified article, which is actually supplied to the buyer, there is no implied warranty that it shall answer the particular purpose intended by the buyer, although such purpose is communicated to the dealer beforehand."

Apparently, it was plaintiff's idea at the start that all he had to do was to refute the application of the last two mentioned cases. Then defendant raised the well-established rule that the trial court's ruling will not be reversed if it happens to be correct even though that court gave the wrong reason for its ruling. (*Johnson v. Farmers and Bankers Life Ins. Co.*, 173 Kan. 8, 244 P. 2d 199; *Johnson v. Boeing Airplane Co.*, 175 Kan. 275, at 283, 262 P. 2d 808; *Rine Drilling Co. v. Popp*, 184 Kan. 13, syl. § 2, 334 P. 2d 426, and authorities cited.)

Whatever be the rule of the Hopper and Ehrsam cases, we do not think they control the instant case, and base this decision on other grounds.

The record is unusual in this case in that five abstracts have been filed. There has been some tendency to quibble over facts. For instance, we are not sure whether a sample of the adhesive was furnished to the army engineers. Nor are we certain whether Mr. Brown, who is the real plaintiff, was aware of the identity of the

manufacturer of the adhesive at the time of the purchase. He seems to have testified at times in the affirmative, but again the plaintiff argues to the contrary.

The defendant in its brief has directed attention to the labels on the cans of adhesive. The label first gave quite complete directions for the use of the adhesive, and then contained the following:

"However, in the event that when the adhesive is applied according to direction, it fails to function properly and satisfactorily for a period of six months after the application, the manufacturer and/or seller will replace free of charge all such material which shall be the limit of its liability."

Some might suggest that the above constituted an express warranty and limited all other warranties. But plaintiff has completely ignored the matter even after defendant raised the question in the brief, and said that the adhesive was not applied according to directions.

The chief endeavor at the trial seems to have been for the plaintiff to attempt to show by a chemist witness that the adhesive might pass the commercial tests specified by the government but then deteriorate to the point where it would not hold the tile on the wall. On his motion for new trial, plaintiff got this evidence before the court and the chemist said that an adhesive containing linseed oil would deteriorate. However, the chemist was never asked if he could tell whether the adhesive which he still had in his possession and which was a part of the goods sold by defendant was a good or a poor adhesive at the present time. This, it seems to us, would be quite important. The plaintiff had it within his power to show whether the adhesive he had left was the effective cause of the failure as far as its present condition was concerned. The idea that it had deteriorated would not then have been so speculative and not so subject to the speculative argument that the tile had not been properly laid.

We have canvassed all five abstracts in this case and find no clear evidence that the adhesive was ever shown to be actually inferior at any certain time. Certainly, plaintiff could have done so, if such were the case, and we feel that it is his burden to prove his cause of action and also to show sufficient record in this court.

The orders appealed from must be affirmed.

FATZER, J., dissenting: Giving the plaintiff's evidence the most favorable inferences to which it is entitled, it is my opinion the

defendant's demurrer thereto should have been overruled. The press of work does not permit an extended discussion of the question whether the plaintiff could recover on an implied warranty of fitness of the adhesive. In my opinion he could. I would enter an order granting the plaintiff a new trial.