No. 44,848

CLAIRE M. PIERCE and HAZEL F. PIERCE, *Appellees*, v. THE BOARD
OF COUNTY COMMISSIONERS OF LEAVENWORTH COUNTY, KANSAS,
*Defendant*, and DEAN R. DAVIS, *Appellant*.

(434 P. 2d 858)

Opinion filed December 9, 1967.

*John H. Fields,* of Kansas City, argued the cause, and *David W. Carson, John K. Dear, Ernest N. Yarnevich, J. W. Mahoney,* and *Joseph T. Carey,* all of Kansas City, were with him on the brief for the appellant.

*John H. Murray* and *John C. Tillotson,* both of Leavenworth, argued the cause, and were on the brief for the appellees.

The opinion of the court was delivered by

Fontron, J.: This is an action to set aside a sheriff's deed issued to Dean R. Davis, herein called Davis or defendant, as the purchaser at a tax foreclosure sale held pursuant to proceedings instituted by the Board of County Commissioners of Leavenworth County. The plaintiff landowners prevailed in the court below and Davis has appealed.

On January 31, 1958, Claire M. Pierce and Hazel F. Pierce, hereafter referred to by name or as plaintiffs, acquired title to forty acres of land in Leavenworth County, from a Mary Perry. Plaintiffs paid some $5500 or $6000 of their own money on the $12,500 purchase price and borrowed the balance from Nellie M. Bonebrake, securing payment of the same by mortgage. In this transaction the Pierces were represented by a real estate agent by the name of Buckles, upon whom they relied, and who represented the seller, as well. Buckles had the abstract to the property brought up to date and delivered the same to Mrs. Bonebrake, the mortgagee, without ever showing it to the Pierces. The abstract disclosed that on January 16, 1958, some fifteen days before plaintiffs received their deed, the last half of the 1957 taxes were due and unpaid. This information was never communicated personally to the Pierces, and Dr. Pierce never saw the abstract until he took it to his present attorney.

In June of 1958, after remodeling the house, the Pierces moved to their Leavenworth County property and have resided there ever since. In August, 1959, having failed to receive the statement for

1958 taxes, Dr. Pierce went to the county treasurer's office where he paid the 1958 tax and interest due thereon, in full. At this time Dr. Pierce asked that future tax statements be mailed to him at Turner, Kansas, where he maintained his office.

Tax statements for the years 1959, 1960 and 1961 were addressed to Dr. Pierce at Turner, were received by him there, and the taxes were paid in full in December of each year. Each tax statement contained a place to be checked if delinquent taxes were due, but no delinquent taxes were indicated on either of the three statements.

In either 1961 or 1962, Dr. Pierce borrowed additional money from Mrs. Bonebrake to pay for some remodeling, and at one time he placed an FHA improvement loan on the place which he later paid off.

In April, 1962, the Board of County Commissioners of Leavenworth County filed a tax foreclosure action in which the Pierces were included as defendants, alleging the last half of the 1957 tax was unpaid on plaintiffs' property and asking that its lien for taxes be foreclosed and the land sold to pay the taxes and interest, which then amounted to $97.29. A summons was issued for the Pierces which was returned by the sheriff on May 3, 1962, as not served for the reason that, after diligent search, he was unable to locate them in Leavenworth County. Thereafter the county attorney filed an affidavit for service for publication averring that plaintiff was unable to obtain personal service of summons upon the Pierces within the state of Kansas. Publication service was thereupon commenced against the Pierces.

Judgment was ultimately taken foreclosing the tax lien against the Pierce property, notice of sale was published as required by law and the property was sold to Davis for the sum of $600. This sale was confirmed on October 25, 1962, a sheriff's deed was issued to Davis, and the deed was recorded November 29, 1962.

On April 27, 1963, Mr. Davis demanded immediate possession of the property from Mrs. Pierce, which was the first either she or her husband knew of the foreclosure proceedings under which their home had been sold. Approximately a month later, Mr. Davis returned at night, routed Dr. Pierce out of bed and wanted to know what he was going to do about it.

The present action was filed in June, 1963, naming both Davis and the Board of County Commissioners as defendants and alleging the tax foreclosure proceedings were void on two grounds: First,

because no taxes were due and unpaid when the tax foreclosure action was commenced; and second, that in the affidavit for publication service it was knowingly and falsely alleged that personal service could not be had on plaintiffs, when in fact they resided on the premises. The plaintiffs prayed that the sheriff's deed be set aside and that they be given such other relief as was just and equitable.

To this petition the Board filed a general denial, while Davis answered denying the tax foreclosure proceedings were void. Davis further filed a counter claim against the plaintiffs for the rental value of the property after November 29, 1962, and filed a cross claim against the county commissioners for $600 plus interest should sale of the property to him be held invalid.

In this posture the case proceeded to trial to the court, after preliminary motions to dismiss had been overruled. The court again overruled a motion to dismiss after plaintiffs' evidence was introduced, and at the conclusion of the trial filed findings of fact and conclusions of law, and entered judgment setting aside the deed to Davis, on condition that plaintiffs pay all back taxes and interest together with costs chargeable to them in the foreclosure action and the costs of this case. The court also denied Davis' counter claim against the plaintiffs for rent, but entered judgment in his favor on his cross claim against the county for $600 plus 6% interest.

The trial court found, in addition to facts already reflected in this opinion, that plaintiffs were not personally served with summons in the tax foreclosure action and had no actual knowledge that the taxes on the real estate for 1957 had not been paid in full until they learned of the tax foreclosure sale on or about May 1, 1963; that plaintiffs had paid the taxes for the years 1958 to 1962, inclusive, but that the last half of the taxes for 1957 had not been paid; and that plaintiffs stood ready to pay all delinquent taxes with interest.

Four conclusions of law were entered by the court:

"1. This court has jurisdiction of the subject matter and of the parties to this action.

"2. The proceedings in the tax foreclosure suit, Case No. 37871, were regular and valid. The sheriff of Leavenworth County, Kansas, acted in good faith in attempting to serve the defendants in said action with a copy of the summons, and the county attorney of said county acted in good faith in filing the affidavit for publication service in said action.

"3. The plaintiffs have properly availed themselves of the benefits of K. S. A. 79-2804 (b).

"4. The factual situation in this case is such as to require this court to exercise its judicial discretion and its equity powers and to give the plaintiffs an opportunity to save their home."

None of the trial court's findings of fact are questioned by Mr. Davis in this appeal but the third and fourth conclusions of law are challenged.

The challenge to conclusion of law No. 3 is predicated on the theory that this action is controlled, in its procedural aspects, by the provisions of G. S. 1949, 60-2530 which was in effect when this action was filed.

That statute outlined the usual procedure for opening a default judgment rendered on service by publication. It formed a part of the old Code of Civil Procedure as its successor, K. S. A. 60-309, is part of the new Code. While an action under the old statute might have been brought within three years after the date of judgment, the statute also provided that title to property which had passed to a purchaser in good faith should not be affected, after the expiration of six months, by proceedings brought thereunder. The defendant therefore argues that the present action was commenced too late—it having been filed more than six months after he had acquired title through the tax foreclosure proceedings.

Aside from the fact that Davis, as a purchaser at the tax foreclosure sale, does not occupy the status of a bona fide purchaser, (*Isenhart v. Powers*, 135 Kan. 111, 9 P. 2d 988) the major premise on which he relies is faulty. G. S. 1949 (now K. S. A.) Ch. 79, Art. 28 provides a full, complete, and comprehensive procedure for the judicial foreclosure of tax liens by counties and the sale of real estate thereunder. Included within that procedure are provisions for the bringing of actions to open, vacate or set aside judgments rendered pursuant to the act and limiting the time for commencing suit to one year after the sale has been confirmed.

In *Phillips Petroleum Co. v. Moore*, 179 Kan. 482, 297 P. 2d 183, an action to cancel a sheriff's deed issued in a tax foreclosure proceeding, we discussed the comprehensive character of G. S. 1949 (K. S. A.) 79-2801, *et seq.*, and we said:

". . . It is one statute with one purpose. Without discussing each of its sections, suffice it to say the legislature intended it to be a complete and independent code for the collection of taxes levied and assessed upon real estate, having a separate and distinct judicial proceeding in which its own procedures and limitations are prescribed. Its provisions are specific and complete. It conferred upon district courts jurisdiction to hear and determine all

issues of fact or law which might arise in its application. One of its purposes is to insure a prompt and just determination in a court of record of all issues pertaining to every person shown by the record to have any interest or title in real estate described in a petition pending before the court.

.    .    .    .    .    .    .    .    .    .    .    .

"The statute (79-2804b) fixes a definite time, six months (now twelve months) within which any proceeding may be brought to set aside a judgment. The legislature had authority to make such a limitation; its purpose was two-fold: First, to permit the owner of real estate to make application in the tax foreclosure action or by the institution of an independent legal or equitable action, to open, vacate, modify or set aside the judgment or sale to show, if he could, among other things, that the real estate was not subject to taxation or that the taxes had been paid; and second, that purchasers at tax foreclosure sales should know the limitation of time within which the judgment of the court upon which the sale was predicated, might be attacked." (pp. 493, 494.)

Our decision in Phillips reaffirmed what had been held earlier in *Shell Oil Co. v. Board of County Comm'rs,* 171 Kan. 159, 231 P. 2d 220, where it was determined that all proceedings in tax foreclosure actions are governed by our tax foreclosure statutes, and that action to vacate proceedings had under those statutes must be taken within the time prescribed by G. S. 1949, 79-2804b. We adhered to this decision on rehearing. (*Shell Oil Co. v. Board of County Comm'rs,* 171 Kan. 595, 237 P. 2d 257.)

Since the present action is not procedurally controlled by G. S. 1949, 60-2530, but by G. S. 1949, 79-2804b, the requirement of veri-fication found in the former, does not apply to the instant lawsuit, and the defendant's contention in such regard is without merit.

The defendant's challenge to the second conclusion of law is bottomed on the proposition that in view of the express findings made by the court, there is no occasion for the intervention of equity. Davis directs our attention to findings that the last half of the 1957 tax was due and unpaid when the foreclosure proceedings were filed and when the sale to Davis was confirmed. Attention is also called to the court's second conclusion of law that the fore-closure proceedings were regular and valid, that the sheriff acted in good faith in attempting to serve the Pierces and the county attorney was in good faith in filing the affidavit for service by publication.

We are inclined to believe Davis is correct in contending that the record fails to disclose a situation calling for the application of equity. Our former cases compel this view. In *Sherman County Comm'rs v. Alden,* 158 Kan. 487, 148 P. 2d 509, the trial court re-

fused to confirm sale of the defendant's home in a tax foreclosure action on the premise that the bid was inadequate, plus the defendant's erroneous understanding the sale would extinguish his personal indebtedness on the home. On appeal this court reversed, and held:

"In proceedings under section 79-2804, G. S. 1943 Supp., general equity powers may not be invoked to refuse confirmation and invalidate a tax sale shown to have been fairly held, with no element of fraud and in every way regular under the statute." (Syl. ¶ 5.)

This case overruled *Atchison County Comm'rs v. Wright*, 151 Kan. 325, 99 P. 2d 857.

The Alden case was followed in *Sumner County Comm'rs v. Avis*, 163 Kan. 388, 183 P. 2d 462, where we held the mistaken belief of one who bought a lot at a tax forclosure sale that certain improvements were located thereon, provides no ground for refusing to confirm the sale. In *Board of County Comm'rs v. Groomer*, 166 Kan. 593, 203 P. 2d 237, this court said that inadequacy of the price is not an irregularity, as that word is used in the statute, and furnishes no valid basis for declining to confirm the sale and order a deed issued. The rule expressed in Alden and subsequent cases was again affirmed in *Jesberg v. Klinger*, 184 Kan. 519, 523, 337 P. 2d 660, although the petition to vacate a sale in that case was said to be good for the reason that fraud and bad faith were alleged on the part of the purchaser.

We conclude the trial court was mistaken in deciding that its equitable powers could be invoked, but this conclusion does not dispose of the case. The plaintiffs maintain that under the attending circumstances they have been deprived of their property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and § 2 of the Bill of Rights of the Kansas Constitution. Plaintiff's counsel candidly admits the constitutional question was not raised in the court below and concedes, also, the general rule to be that a reviewing court will consider only those issues upon which the parties have tried their case. (*Owen v. Mutual Benefit Health & Acc. Ass'n*, 171 Kan. 457, 233 P. 2d 706; *Oliver v. Nugen*, 180 Kan. 823, 308 P. 2d 132; 5 Am. Jur. 2d, Appeal And Error, § 546, p. 31.)

However, as the plaintiffs point out, some exceptions to the general rule have been recognized. Among the few acknowledged exceptions are cases where the newly asserted theory involves only

a question of law arising on proved or admitted facts and which is finally determinative of the case. (5 Am. Jur. 2d, supra.) It has also been said that a reviewing court may consider questions raised for the first time on appeal if the same be necessary to serve the ends of justice or to prevent denial of fundamental rights. (5 Am. Jur. 2d, supra, § 549, p. 34; see, also, *Swift v. Kelso Feed Co.*, 161 Kan. 383, 168 P. 2d 512, including the concurring opinion of Hoch, J., pp. 387, 388.)

The view has further been taken that the judgment of a trial court should be upheld on appeal, if the same be correct, even though that court may have relied on a wrong ground or assigned a wrong reason for its decision. (5 Am. Jur. 2d, supra, § 727, pp. 170, 171.) This court signified its agreement with this exception to the general rule in *State, ex rel., v. Miller*, 177 Kan. 324, 333, 279 P. 2d 223, 52 A. L. R. 2d 691, where we said:

"The fact we do not agree with the trial court's judgment for the reasons assigned does not warrant its reversal if there is other sound ground on which it may be sustained. (See e. g., *Kirkpatrick v. Ault*, 174 Kan. 701, 258 P. 2d 262, and authorities cited.) . . ."

In a later case, *Brown v. General Distributors, Inc.*, 190 Kan. 30, 372 P. 2d 65, this court held:

"The ruling of a trial court will not be reversed if it is deemed correct by the appellate court even if the trial court gave an incorrect reason for its order." (Syl. ¶ 2.)

As we view the matter, determination of the constitutional issue which the plaintiffs now seek to raise will bring this case within all three of the exceptions just mentioned. Accordingly, the court feels justified in proceeding to consider the Pierces' claim that under the conditions shown of record, the proceedings had in the tax foreclosure action denied them due process of law. The defendant has presented no brief on this particular question, although he has had ample time to do so in the nine months since the issue was raised in the plaintiffs' brief.

At this juncture we deem it advisable to refer once again to certain undisputed evidence. The Pierces moved to their small farm in the summer of 1958 and have lived there continuously ever since. From June, 1958, to the present time they have had a Leavenworth RFD address. In August, 1959, Dr. Pierce went to the office of the Leavenworth County Treasurer, to inquire about his taxes for 1958 and there paid the tax in the amount given to him, plus interest.

At that time he gave the county treasurer his office address at Turner, Kansas, and asked that tax statements be sent to him there. The county treasurer did mail tax statements for the years 1959, 1960 and 1961 to Dr. Pierce at Turner, Kansas, and Dr. Pierce paid the entire tax shown on each statement in December of each year. Neither Dr. nor Mrs. Pierce were personally served in the foreclosure action, but by publication and neither one had knowledge of the foreclosure proceedings or of the delinquent taxes until May following the sale.

In our opinion these facts bring this case fairly within the rule of *Mullane v. Central Hanover Tr. Co.*, 339 U. S. 306, 94 L. Ed. 865, 70 S. Ct. 652. The defendant in Mullane was trustee of a common trust in which many small trust estates were pooled in one fund for investment administration. Some months after the trust was established, the trustee petitioned for approval of its account as the common trustee, giving notice of the hearing to be held thereon, by publication in a local paper, which strictly complied with the requirements of the New York statute.

Mullane, as special guardian, appeared specially objecting that the notice given and the provisions for giving notice were inadequate to afford due process to the beneficiaries under the Fourteenth Amendment. It appears that the trustee had on its books the names and addresses of the beneficiaries represented by Mullane, and had been able to give notice by mail to the beneficiaries who were known at the time the trust was established.

Under these circumstances the Supreme Court overruled the constitutional objections interposed to the publication notice as to those beneficiaries whose interests or addresses were unknown to the trustee. However, as to known beneficiaries, the court said:

"As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." (p. 318.)

In the course of its opinion, the court said that due process of law at a minimum requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case" (p. 313) and, continuing in the same vein, the court spoke in the following language:

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. . . ." (p. 315.)

The Mullane case was followed in *Walker v. Hutchinson City,* 352 U. S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200. In this case the city condemned part of Walker's property for street purposes. The appraisers who were appointed to determine compensation were required by statute to give at least 10 days notice of their proceedings either in writing or by one publication in the official city paper. The commissioners chose the latter method of giving notice. Walker later sued the city alleging he had not been notified of the proceedings, knew nothing of them, and that the publication notice was insufficient to satisfy the Fourteenth Amendment's requirements of due process. In upholding Walker's contention the court stated the rule to be that, where feasible, notice of pending proceedings must reasonably be calculated to inform those parties whose legally protected interests might be adversely and directly affected thereby. In its opinion the court stated:

". . . In the present case there seems to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. . . ." (p. 116.)

*Schroeder v. City of New York,* 371 U. S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279, 89 A. L. R. 2d 1398, presents a case very similar to *Walker v. Hutchinson City,* supra. There, the city filed proceedings to divert a portion of a river upstream from the plaintiff's summer home which bordered the river. The statute, with which plaintiff had complied, provided that notice be given by newspaper publication, and by posting signs along the route condemned. None of the signs were placed on plaintiff's property, and no other attempt, except the newspaper publication, was made to notify plaintiff, although her name and address were readily ascertainable from the deed records and tax rolls. After the statutory time for filing a claim for compensation had expired, the plaintiff sought redress alleging she had neither seen the signs, nor received notice of the proceedings.

In following the rule expounded in Mullane and Walker, the United States Supreme Court held that the newspaper publication plus the posted notices did not measure up to the quality of notice required by the due process clause and that the city had failed in

its constitutional obligation to make at least a good faith effort to notify the plaintiff personally—an obligation which the dispatch of a single letter would have discharged.

In *City of Houston v. Fore*, 401 S. W. 2d 921 (Tex.), the validity of a paving assessment was involved. The city, by ordinance, fixed the per foot assessment for certain paving improvements, set a date for a hearing on benefits and provided notice be given by three publications in a local newspaper. Texas statutes provided that no paving assessments be made against abutting landowners until after notice and opportunity for hearing had been given.

The city sued the defendant, an abutting owner, to foreclose its paving assessment lien. The defendant, who had not read the publication notice and who had no knowledge of and did not attend the hearing, contended that notice of the benefit hearing was insufficient under the due process clause of the 14th Amendment. The evidence disclosed that defendant had resided in Houston for 24 years, that his address was on the tax rolls and known to the city, which had addressed communications to him at his address. In holding that the constructive service on defendant did not meet the requirements of due process, the court said:

".  .  . notice by publication is not enough with respect to a person whose name and address is known or very easily obtainable." (Citing cases.) (p. 923.)

*Wisconsin Electric Power Co. v. City of Milwaukee*, 352 U. S. 948, 1 L. Ed. 2d 241, 77 S. Ct. 324, involved a paving assessment levied by Milwaukee. The judgment of the supreme court of Wisconsin upholding constructive notice by publication as adequate was vacated by the federal court and remanded for consideration in the light of *Walker v. Hutchinson City*, supra. On remand the Wisconsin court in 275 Wis. 121, 81 N. W. 2d 298, saw the light and held that the notice given by publication did not meet the demands of due process.

See, also, *New York v. N. Y., N. H. & H. R. Co.*, 344 U. S. 293, 97 L. Ed. 333, 73 S. Ct. 299.

We do not mean to imply, nor has the federal supreme court ever declared, that constructive service by publication will never satisfy constitutional requirements. There may, indeed, be many instances where the notice provided by publication service, unsatisfactory though it may be, is the only method possible. But such is not true of the case before us. Here, the mailing address of Dr. Pierce was

not only readily ascertainable, but was actually on file with the county treasurer. The county treasurer had for three years addressed tax statements to Dr. Pierce at Turner, Kansas, where they had been received and taxes had been paid in response thereto.

If it be argued that Pierce's address was not on file with the sheriff, or the county attorney, we reply that they and the treasurer are but arms of the same governmental body — Leavenworth County. Either the sheriff or the county attorney could have ascertained the whereabouts of Dr. Pierce by the very simple expedient of making inquiry of the treasurer, or of examining the records of that officer. The county may not now use the excuse that its right hand knew not what its left hand did, to the damage of two of its residents. The means adopted by Leavenworth County to notify the Pierces of the foreclosure action were not the best means reasonably available to it under the attendant circumstances, nor such as were reasonably calculated to inform the Pierces of the adverse proceedings pending against them.

It may be argued with some justification that our present decision conflicts with our former holding in *Phillips Petroleum Co. v. Moore,* supra. In that case Phillips contended that service upon it by publication was a denial of due process in that it failed to provide a reasonable method of apprising it of pending tax foreclosure proceedings. This claim was based on the appointment by Phillips of a resident agent on whom service of summons could be had and on the execution by Phillips of its irrevocable consent to be sued in the courts of this state by service of process on the Secretary of State.

Phillips' contention was rejected, as this court held that publication service on Phillips was reasonably calculated to inform that foreign corporation of the pending foreclosure action and afforded it opportunity to appear and defend itself. Thus, we said, neither the 14th Amendment nor § 2 of our Bill of Rights were violated.

The Phillips case was decided prior to Walker which, with other cases herein cited, effected substantial change in the law regarding the requirements of due process in relation to service by publication. We now view the rule enunciated in Syllabus ¶ 2 of Phillips as not being in accord with recent decisions of the federal supreme court. Accordingly Syllabus ¶ 2 and corresponding portions of the Phillips opinion must be disapproved. In this connection we believe it significant that K. S. A. 60-307 (*d*) and (*f*) require that where the

address of a defendant sought to be served by publication is known, his address must be set out in the affidavit for publication service and a copy of the publication notice must be mailed to him at his address within seven days after first publication.

Attention is also directed to *Robertson v. Lemmon,* 189 Kan. 619, 371 P. 2d 175, where tax foreclosure proceedings conducted several years before were challenged collaterally in an action to determine ownership of certain mineral interests. This court held the provisions of G. S. 1949 (now K. S. A.) 79-2804b, limiting the time for challenging a tax foreclosure proceeding to twelve months after confirmation, did not violate the due process clause of the United States Constitution or § 2 of the Kansas Bill of Rights. In the opinion we sought to distinguish the case from *Walker v. Hutchinson City,* supra, on the ground that Walker involved a condemnation proceeding, where the owner had no reason to anticipate his land would be taken. We believe the distinction was inadvisable and cannot be sustained, even though we are not now called upon to decide the precise question presented in Robertson.

In conclusion we hold that the several orders and judgments entered by the trial court, as they have heretofore been set out, must be affirmed. It is so ordered.