(56 P.3d 309)

No. 87,437

STATE OF KANSAS, *Appellee*, v. ANTHONY T. CAMERON, *Appellant*.

Opinion filed October 25, 2002.

*Cory D. Riddle*, assistant appellate defender, and *Randall Hodgkinson*, deputy appellate defender, for appellant.

*Richard A. Olmstead*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before MARQUARDT, P.J., PIERRON, J., and ROGG, S.J.

ROGG, J.: Anthony T. Cameron was convicted by a jury of felony fleeing or attempting to elude an officer. Cameron challenges the sufficiency of the evidence supporting his conviction and the use of his prior juvenile convictions to increase his criminal history. We affirm.

The only question raised by Cameron's claim of insufficiency of evidence is the definition of "motor vehicle accident." This is an element of the offense. We, therefore, focus on the evidence surrounding this narrow question of statutory interpretation.

Officer Robert Bachman was driving a marked patrol car, and he was in uniform with his badge displayed. Officer Bachman had been alerted to watch for a tan Buick which was being driven in his direction. Bachman had also been advised that there was an outstanding warrant for the driver of the car. When the Buick passed Bachman's location, he pulled out into traffic and proceeded to follow it. Shortly thereafter, Bachman activated his emergency lights and siren in an attempt to stop the vehicle. The driver did not stop.

Bachman continued following the Buick with his emergency lights activated. According to Bachman, the main roads were "not too icy," however, the side streets were "extremely icy." Bachman testified that during the pursuit, the driver of the Buick ran several stop signs, crossed the center line, ran a stop light, and failed to signal on numerous turns. Bachman did not, however, relay all of these infractions to the dispatcher.

Eventually, the driver lost control of the Buick and hit a curb. Four occupants of the car immediately exited the vehicle and started running. The driver ran in one direction, and the three passengers ran in another. With the help of several officers, detectives, and United States marshals, the four occupants were apprehended. Bachman later identified Cameron as the person who exited from the driver's side of the Buick. Due to the collision with the curb, the Buick sustained damage to the right front tire and the vehicle was leaking antifreeze. Bachman testified that the Buick was inoperable.

Cameron was charged with felony fleeing or attempting to elude an officer in violation of K.S.A. 8-1568(d)(1)(D). Following a jury

trial, Cameron was convicted of that charge. The trial judge, for purposes of sentencing, found that Cameron's criminal history score fell within the "A" classification. His criminal history score was the result of several prior juvenile convictions. Based on Cameron's criminal history score, the trial judge sentenced him to a 16-month prison term.

### Sufficiency of evidence

"In reviewing a challenge to the sufficiency of the evidence, our standard is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Robbins*, 272 Kan. 158, 180, 32 P.3d 171 (2001).

Cameron argues that the prosecution failed to prove an element of felony fleeing or attempting to elude a police officer. See K.S.A. 8-1568(b)(1)(D). Of the jury instructions given by the trial court for the elements of the charge, Cameron only asserts that the prosecution failed to establish the element that he was "involved in [a] motor vehicle accident."

Cameron's argument that he was not involved in a motor vehicle accident hinges on the definition of "motor vehicle accident." The term is not defined in the statute, and Kansas case law does not provide a precise definition. Longstanding rules of statutory construction provide:

" '[C]riminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent.' *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998)." *State v. Sophophone*, 270 Kan. 703, 712, 19 P.3d 70 (2001).

A fundamental rule of statutory construction is that the intent of the legislature governs. *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998). In addition, the words in a statute are given their ordinary and plain meaning. *State v. Donlay*, 253 Kan. 132, 134, 853 P.2d 680 (1993).

Cameron contends that Black's Law Dictionary supplies the ordinary meaning of the term "motor vehicle accident." Black's Law Dictionary provides two definitions of the term "automobile accident." The two definitions are basically the same in that they both define "automobile accident" as an incident occurring during the operation of an automobile which causes "injury to the person or property of another." Black's Law Dictionary 15 (6th ed. 1990).

Cameron's insufficient evidence argument is based on the definition language "injury to the person or property of another." At trial, the prosecution presented evidence that Cameron's own motor vehicle had been damaged when it struck a curb. The prosecution did not, however, show any injury to the person or property of another. Cameron claims that an essential element of the crime of felony fleeing or attempting to elude an officer was not proved.

Not surprisingly, the prosecution takes a different view. The prosecution relies on the definition of "accident" as provided in the American Heritage Dictionary of the English Language. That dictionary defines "accident" as: "[a]n unexpected and undesirable event, especially one resulting in damage or harm." American Heritage Dictionary of the English Language 5 (4th ed. 2000). Under that definition, the prosecution contends that the damage sustained by Cameron's own vehicle established the element of a motor vehicle accident and, as a result, Cameron's conviction is supported by sufficient evidence.

We have looked at case law from other states in the hope that it might be helpful. It does not offer a conclusive interpretation of the term "motor vehicle accident." In *Manhattan and Bronx Surface Transit Operating Authority v. Gholson*, 98 Misc. 2d 657, 658-59, 414 N.Y.S.2d 489 (1979), the Supreme Court of Kings County, New York, determined that an assault which occurred inside a motor vehicle was not a motor vehicle accident. In doing so, the court examined the term "motor vehicle accident" and found that "[t]he term motor vehicle accident is not an enigmatic one. The words evoke an image of one or more vehicles in a forceful contact with another vehicle or a person, causing physical injury." 98 Misc. 2d 658-59. The New York court's definition contemplates an injury to

the person or property of another and, as such, it supports Cameron's definition from Black's Law Dictionary.

In contrast, the Supreme Court of Washington indicated, in dicta, that the definition of "motor vehicle accident" may not include the requirement of injury to the person or property of another. *Tyrrell v. Farmers Ins. Co.*, 140 Wash. 2d 129, 132-36, 994 P.2d 833 (2000).

We thus turn to Kansas statutes themselves to see if we can determine the legislative intent. "In construing statutes and determining legislative intent, several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible." *Vega-Fuentes*, 264 Kan. at 14.

K.S.A. 8-1568(b)(1)(D) states that fleeing or attempting to elude a police officer will be a felony offense if the driver was "involved in any motor vehicle accident or intentionally causes damage to property." The legislature's use of the word "any" appears to suggest that the statute is broad in scope. A reading of subsection (b)(1)(D) indicates that all types of motor vehicle accidents are within the scope of that subsection. K.S.A. 8-1568 falls under the chapter regulating automobiles and other vehicles. Within that same chapter, the language "motor vehicle accident or collision" appears. See K.S.A. 8-2,145(c)(2); K.S.A. 8-1567a(e)(2). The language "motor vehicle accident or collision" is not defined in the statute. Black's Law Dictionary defines "collision" as the

"[s]triking together of two objects, one of which may be stationary. Act or instance of colliding; state of having collided. The term implies an impact or sudden contact of a moving body with an obstruction in its line of motion, whether both bodies are in motion or one stationary and the other, no matter which, in motion." Black's Law Dictionary 264 (6th ed. 1990).

Based on the legislature's differentiation between the terms "motor vehicle accident" and "collision," an argument could be made that Cameron's automobile was not in a motor vehicle accident but rather a collision.

It is common to refer to an event where only one vehicle is involved and damage occurs to that vehicle as a "one vehicle accident" or "one car accident." The ordinary and plain meaning of

"motor vehicle accident" as used in K.S.A. 8-1568(b)(1)(D) includes an event where only one motor vehicle is involved and damage to it occurs. See *State v. Donlay*, 253 Kan. at 134. We find that there was sufficient evidence to support Cameron's conviction.

## Criminal history

On appeal, Cameron challenges for the first time the use of his prior juvenile convictions to increase his criminal history score. Cameron argues that the use of his prior juvenile convictions to increase his score—and, in turn, his sentence—was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Cameron acknowledges that he failed to raise this issue at the trial court level. "Generally, '[w]hen constitutional grounds are asserted for the first time on appeal, they are not properly before [this court] for review.'" *State v. Conley*, 270 Kan. 18, 30, 11 P.3d 1147 (2000) (quoting *State v. Shears*, 260 Kan. 823, 837, 925 P.2d 1136 [1996]).

However, in *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967), the Kansas Supreme Court recognized three exceptions to this general rule. Under *Pierce*, a newly presented issue may be considered on appeal if (1) the issue "involves only a question of law arising on proved or admitted facts and is determinative of the case," (2) "consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights," or (3) "the district court is right for the wrong reason." *Conley*, 270 Kan. at 30.

Cameron contends that the issue of his prior juvenile convictions should be dealt with on appeal because it is "necessary to serve the interests of justice or to prevent the denial of fundamental rights." On more than one occasion, Kansas courts have relied on the *Pierce* exceptions to consider *Apprendi* arguments raised for the first time on appeal. See, *e.g.*, *State v. Graham*, 273 Kan. 844, 854-54, 46 P.3d 1177 (2002); *State v. Gould*, 271 Kan. 394, 404-05, 23 P.3d 801 (2001); *Conley*, 270 Kan. at 31.

The prosecution asserts that the issue is controlled by the Kansas Supreme Court's decision in *State v. Hitt*, 273 Kan. 224, 42 P.3d 732 (2002). One day after Cameron filed his brief, the Kansas Su-

preme Court announced its decision in *Hitt*. In that case, the court held:

"Juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards; therefore, the *Apprendi* exception for prior convictions encompasses juvenile adjudications. Juvenile adjudications need not be charged in an indictment or proven to a jury beyond a reasonable doubt before they can be used in calculating a defendant's criminal history score under the KSGA." *Hitt*, 273 Kan. at 236.

Cameron's issue is controlled by *Hitt* and, as a result, Cameron's prior juvenile adjudications fall under the *Apprendi* prior conviction exception. As such, the trial court did not err in using the prior juvenile adjudications to increase Cameron's sentence.

Affirmed.