The Honorable John T. "Tom" Thull State Representative, 72nd District State Capitol, Room 302-S Topeka, Kansas 67117
Dear Representative Thull:
As State Representative for the 72nd District, you ask our opinion concerning the application of K.S.A. 12-1675 (b)(2) to the investment of idle public funds by governmental entities in certificates of deposit through FDIC-insured banks, savings and loan associations and savings banks that participate in the Certificate of Deposit Account Registry Service (CDARS).
K.S.A. 12-1675 requires that idle funds of various government entities that are not immediately needed for the purposes for which they were collected or received be invested only in specified types of investments, including certificates of deposit with maturities of not more than two years in banks, savings and loan associations and savings banks.[1] Such financial institutions are, however, required to have a main or branch office located in the investing governmental unit. If such an institution is not available, the public funds may be invested in those kinds of financial institutions that have a main or branch office in the county or counties in which all or part of the investing government unit is located.[2]
You inform us that CDARS is a bank service program by which a participating institution may arrange for the allocation of a customer's deposit in excess of the FDIC insurance limit (i.e., $100,000) among other participating institutions in amounts that are then eligible for insurance coverage by FDIC. The initial participating institution receives reciprocal deposits from other participating institutions (and their respective depositors) in a total amount equal to the customer's deposit. You further inform us that such reciprocal funds placed by other depositors through the participating institution are immediately available to the participating institution to meet the credit needs of its community. As you point out, the amount of a governmental entity's deposit thus effectively remains in the local financial institution through which the funds were placed.
Specifically, you ask whether the placement of public funds by a statutorily covered governmental entity[3] through a participating institution would be consistent with K.S.A. 12-1675 (b)(2) under the following conditions: (1) the Kansas participating institution has a main or branch office located in the investing governmental subdivision or, if applicable, in a county or counties in which all or part of the governmental entity is located; (2) the Kansas institution receives reciprocal deposits in an amount equal to the amount of funds placed by the governmental entity; (3) other participating institutions issuing certificates of deposit to the governmental entity are located throughout the United States; and (4) each certificate of deposit issued by such participating institutions is in an amount that is eligible for full FDIC insurance coverage.
In a review of the legislative history of K.S.A. 12-1675,[4] former Attorney General Carla Stovall identified a number of complimentary purposes that the statute seeks to serve: Liquidity and a reasonable rate of return; the safeguarding of public funds; and promotion of Kansas financial institutions that would presumably invest in the local community and the State.
Regarding liquidity and a reasonable rate of return, participation in CDARS would maintain liquidity, or immediate availability, to meet community credit needs the same as if the full investment were deposited in a Kansas financial institution. Additionally, as the rate of return is statutorily established,[5] any negotiated interest rate would need to conform with those statutory parameters.
Regarding the safeguarding of public funds, initially we note that although the term "invested" as required by K.S.A. 12-1675 is not statutorily defined, the ordinary meaning[6] is "to commit money for a long period in order to earn a financial return; to place money with a view to minimizing risk rather than speculating for large gains at greater hazard."[7] Certainly, participation in CDARS would increase the safety and minimize the risk of invested funds as all funds would enjoy the benefit of FDIC insured protection, not just the first $100,000. Thus participation in CDARS would maximize the safeguarding of public funds for amounts over the first $100,000 of a public entity's investment.
Finally, participation in CDARS would continue to further the promotion of Kansas financial institutions that would presumably invest in the local community and the State as the full amount of a public entity's deposit would be available to the local financial institution to meet community credit needs.
In conclusion, it is our opinion that K.S.A. 12-1675 (b)(2) allows the specified governmental entities to invest idle public funds by governmental entities in certificates of deposit through FDIC-insured banks, savings and loan associations and savings banks that participate in the Certificate of Deposit Account Registry Service (CDARS). Specifically, the placement of public funds by a statutorily covered governmental entity through a participating institution would be consistent with K.S.A. 12-1675 (b)(2) under the following conditions: (1) the Kansas participating institution has a main or branch office located in the investing governmental subdivision, or if applicable, in a county or counties in which all or part of the governmental entity is located; (2) the Kansas institution receives reciprocal deposits in an amount equal to the amount of funds placed by the governmental entity; (3) other participating institutions issuing certificates of deposit to the governmental entity are located throughout the United States; and (4) each certificate of deposit issued by such participating institutions is in an amount that is eligible for full FDIC insurance coverage.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] K.S.A. 12-1675 (b)(2).
[2] Id.
[3] County, city, township, school district, area vocational-technical school, community college, firemen's relief association, community mental health center, community facility for the mentally retarded or any other governmental entity, unit or subdivision of the state of Kansas having authority to receive, hold and expend public moneys or funds.
[4] Attorney General Opinion No. 2001-35.
[5] The statutorily required "investment rate" is a rate which is the equivalent yield for United States government securities having a maturity date as published in the Wall Street Journal, nearest the maturity date for equivalent maturities. K.S.A. 12-1675a (g).
[6] See e.g., State v. Cameron, 30 Kan. App. 2d 1156, 1158 (2002) (words in a statute are given their ordinary and plain meaning).
[7] Webster's 3rd New International Dictionary, p. 1189 (1968).