NOT DESIGNATED FOR PUBLICATION

No. 126,324

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEVON WAYNE DIRKSEN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; AMY NORTON, judge. Submitted without oral argument. Opinion filed June 21, 2024. Sentence affirmed in part and vacated in part, and case remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.


PER CURIAM: In this sentencing appeal, we must decide whether the facts and the law support the court's finding that Devon Wayne Dirksen must register as a violent offender. Dirksen contends that since his crime lacks any element of use of a firearm, the court could not make the finding it did and thus require him to register. The State argues to the contrary. Because this is a person felony conviction and the firearm in Dirksen's possession discharged while he was wrestling with a police officer, we hold that the court properly found that Dirksen is a violent offender.

1

We affirm the sentence. But we do vacate a portion of the sentence and remand so the district court can correct an order for a lab fee and clarify its order for the term of postrelease supervision it had set.

*Seeking to make an arrest, the trail leads police to the Pump Mart.*

One evening in late February 2022, Officer Michael Chandler wanted to find Dirksen to serve some arrest warrants. An anonymous tip put Dirksen at the Pump Mart in Salina; Officer Chandler went there to check it out.

Once Chandler arrived at the Pump Mart, he saw three people by the video games inside the store. Chandler noticed one of these people was of a similar height and stature to Dirksen. Chandler noted that this person wore a hat, face mask, and a sweatshirt hood pulled over their head; the person appeared to be trying to avoid facing Chandler, which Chandler believed to be an attempt to evade detection. This behavior also mirrored Chandler's previous interactions with Dirksen. On one such occasion Dirksen was reportedly trespassing and threatening patrons with bullets falling out of his pockets at the Flying J Truck Stop.

Chandler approached this person and said, "Hey, what's going on man? Hey, can you look at me. Hey." Receiving no response, Chandler tapped the person's shoulder and then physically maneuvered the person to turn around, while stating, "Police Department. Turn around." As the person turned around, Chandler could see the person's face and positively identified him as Dirksen. Chandler proceeded to arrest Dirksen, but Dirksen fled.

*The encounter turns into a foot chase and then a wrestling match.*

Rather than comply with Chandler's directives, Dirksen resisted arrest and made a run for it. Chandler thwarted the effort but was unable to subdue Dirksen and place him in handcuffs. Dirksen slipped out of his jacket, coat, and shirt, which left Chandler holding the shed clothing as Dirksen ran out the door. He almost made it across the street—while Dirksen hoped to avoid arrest that day, gravity had other plans. A shirtless Dirksen tripped on the curb, which allowed Chandler to apprehend him.

Chandler tackled Dirksen from behind and another physical altercation ensued. As they were jostling for control on the ground, both of Chandler's arms were wrapped around Dirksen; Chandler felt Dirksen reach back and pull on his firearm. Fearing the introduction of "a firearm into the situation," Chandler released Dirksen to secure his firearm with both hands. Though Chandler never saw Dirksen's hand on the firearm, he testified that he "definitely felt when [he] went to secure it that [his] firearm was being removed from the holster."

*A shot is fired.*

As he released Dirksen, Chandler heard "a very distinct loud bang which [he] immediately knew was a gunshot. [He] immediately smelled gunpowder, [his] ears were ringing very loud." Mere seconds separated Chandler's release of Dirksen before he heard the gunshot. Based on his training and experience with firearms, Chandler estimated that the firearm discharged within an arm's reach of him, "if not closer, just due to the loudness, the immediate smell of gunpowder, the way [his] ears were ringing immediately" After the gunshot, Chandler "was in fear that [he] had been shot and [he] hadn't realized it yet." He disengaged with Dirksen and verified that he was not injured.

3

Though Chandler believed he was being shot at, he did not feel justified using lethal force to shoot Dirksen "in the back not knowing if he was still armed or if [his] gun went off or what the situation was."

At no point did Chandler see Dirksen with a gun, but officers later found a silver 9mm semiautomatic firearm within a few feet of where Chandler tackled Dirksen. There was an empty shell casing in the chamber, "indicating that the shell never ejected after being fired and it was stuck inside of it."

Neither Chandler nor Dirksen were shot. The only injuries that Chandler sustained were a small scrape on his right knee and some holes and tears in his uniform pants from the fight. He reclipped his radio, which had fallen during the altercation, and advised available officers of what happened and where Dirksen ran after escaping from him. Officers found Dirksen based on the information provided by Chandler and transported him first to the hospital, then to the Salina Police Department.

Officers executed a search warrant while Dirksen was at the police department for gunshot residue, DNA, fingerprints, and photos of Dirksen and his clothing. Chandler testified that he believed that both his firearm and the firearm found at the scene were swabbed for DNA and sent to the KBI for testing, but he was not sure.

*The State files charges.*

Because of the altercation with Chandler, the State charged Dirksen with the following:

1. Attempted aggravated robbery, a severity level 5 person felony;
2. Aggravated battery on a law enforcement officer, a severity level 4 person felony;

3. Aggravated assault on a law enforcement officer, a severity level 6 person felony;

4. Attempted aggravated residential burglary, a severity level 6 person felony;

5. Interference with law enforcement, a severity level 9 nonperson felony;

6. Unlawful discharge of a firearm in city limits, a class B nonperson misdemeanor; and

7. Criminal damage to property, a class B nonperson misdemeanor.

The charges for aggravated robbery, aggravated assault on a law enforcement officer, and unlawful discharge of a firearm in city limits all contain elements requiring proof of the use of a firearm.

*A plea resolves the dispute.*

Dirksen pled guilty to amended charges of attempted aggravated battery on a law enforcement officer, a severity level 6 person felony, and interference with law enforcement, official duty, a severity level 9 nonperson felony, in exchange for the dismissal of the rest of the charges against him. The court accepted the factual basis for support of the plea, which included the charging affidavit, the preliminary hearing transcript, and the motion to suppress hearing transcript. The court found that Dirksen entered his plea knowingly, intelligently, and voluntarily and convicted him of the two amended charges.

*The sentencing court finds Dirksen used a deadly weapon in the commission of his person felony crime.*

The sentencing court imposed the aggravated sentence for both counts and ordered Dirksen to serve them consecutively. This totals 53 months in prison. The court also

5

ordered 24 months of concurrent postrelease supervision for both counts for a total term of 24 months. The court also imposed $1,200 in KBI lab fees.

At the sentencing hearing, the court found that Dirksen used a deadly weapon in the commission of the person felony conviction of attempted aggravated battery on a law enforcement officer. Supporting the court's finding were the facts of the case, the factual basis submitted for Dirksen's plea, the preliminary hearing transcript, and the motion to suppress transcript. The court also considered verbal and written statements from Chandler and Deputy Chief Sean Morton. In the statements, both officers stressed that Dirksen's conduct put Chandler's life in danger and would be a danger to the public at large if released.

*Did the court properly find that Dirksen used a weapon?*

In this appeal, Dirksen claims the sentencing court did not make the appropriate findings on the record that would require Dirksen to register as a violent offender based on the use of a deadly weapon in the commission of a person felony.

The State points out that Dirksen failed to object to the violent offender finding and contends the issue is not preserved for appeal. This is true. We will entertain the issue because there is no real factual dispute and our ruling will be finally determinative of the case under the ruling in *Pierce v. Board of Commissioners,* 200 Kan. 74, 80-81, 434 P.2d 858 (1968).

An understanding of the legal context of this dispute shows the significance of this inquiry. The Kansas Offender Registration Act, K.S.A. 22-4901 et seq., imposes registration requirements on any person convicted of a person felony if the sentencing "court makes a finding on the record that a deadly weapon was used in the commission of such person felony." K.S.A. 22-4902(e)(2). Whether Dirksen is a violent offender under

6

the Act is a question of law subject to de novo review. See *State v. Marinelli*, 307 Kan. 768, 788, 415 P.3d 405 (2018).

A sentencing court may find that a defendant is a violent offender based on K.S.A. 22-4902(e)(2) even if the use of a deadly weapon is not an element of the crime of conviction. See *State v. Epp*, No. 121,872, 2020 WL 6930597, at *3 (Kan. App. 2020) (unpublished opinion) (affirming registration order where the defendant was convicted of criminal threat, a person felony for which the use of a deadly weapon is not an element of the crime).

Dirksen was convicted of attempted aggravated battery on a law enforcement officer, a person felony. That conviction alone does not trigger the Act's registration requirements automatically. *State v. Huggins*, No. 121,878, 2021 WL 69739, at *5 (Kan. App. 2021) (unpublished opinion); see K.S.A. 22-4902(e)(2). To be deemed a violent offender under the Act, the sentencing court needed to make findings on the record that a deadly weapon was used when Dirksen committed his crime of attempted aggravated battery on a law enforcement officer. *Huggins*, 2021 WL 69739, at *5; see K.S.A. 22-4902(e)(2).

*We reject Dirksen's argument about the elements of the crime.*

Dirksen's argument basically centers on the fact that his convictions included no element that a deadly weapon was used unlike the original charges. As a result, Dirksen argues the sentencing court could not find that a deadly weapon was used. Dirksen's argument is not supported by caselaw which approves of a sentencing court's registration order for convictions that do not contain an element on the use of a deadly weapon. The cases below illustrate our point.

In *State v. Allman*, No. 118,585, 2018 WL 5305870, at *4 (Kan. App. 2018) (unpublished opinion), a panel of this court upheld the sufficiency of a registration order based on the sentencing court's deadly weapon finding where the defendant was originally charged with aggravated assault with a deadly weapon but pled guilty to an amended charge of aggravated assault with the intent to commit a felony. See also *State v. Ford*, No. 119,328, 2019 WL 3242420, at *8 (Kan. App. 2019) (unpublished opinion) (upholding registration order where the defendant pled guilty to an amended complaint which was silent on the use of a handgun).

Additionally, in *State v. Bernard*, No. 118,115, 2018 WL 4939367 (Kan. App. 2018) (unpublished opinion), the defendant pled no contest to attempted aggravated battery on a law enforcement officer where an officer attempted to pat the defendant down when the defendant reached for a handgun in his waistband, but officers prevented him from reaching the gun. The court affirmed the sentencing court's registration order based on a deadly weapon finding based on the State's factual proffer at the defendant's plea hearing. *Bernard*, 2018 WL 4939367, at *3-4 (citing *In re E.L.W.*, No. 106,241, 2012 WL 686861, at *2-3 [Kan. App. 2012] [unpublished opinion] [finding that the district court may rely on the State's proffer to make a deadly weapon determination]).

*The sentencing court's deadly weapon finding was supported by substantial competent evidence.*

While the elements of the crimes of which Dirksen was convicted do not require a deadly weapon finding, the evidence, testimony, and case documents all supported the sentencing court's finding that a deadly weapon was used in the commission of Dirksen's person felony conviction. Additionally, the sentencing court made the express findings on the record during Dirksen's sentencing hearing and reflected that finding in the journal entry of sentencing. Two written statements provide evidence of using the gun.

8

*Deputy Chief Sean Morton's statement*

Deputy Chief Sean Morton submitted a letter to the court and emphasized the danger posed by Dirksen to the public:

"I hope I made it clear within that letter that we think that Mr. Dirksen is a danger to our community, and very concerned by the fact that he, in the act of this particular crime, fired a weapon as he was involved in a violent struggle with one of our officers and also tried to remove his gun from his holster.

I think that we need to be aware, that all of us in this room, with this gentleman, takes this type of crime and tries to commit that against one of our folks, police officers in this community, makes us all less safe.

And, so, I guess I would just ask for a reasonable and just sentence with regards to this case, and taking into consideration our community as well as the officers that work at the Salina Police Department as this has a dramatic effect on both their morale, retention, and recruitment for people to join law enforcement if we have individuals such as this that tried to harm one of our own.

Thank you."

*Officer Michael Chandler's statement*

Chandler echoed Deputy Chief Morton's statements and also submitted additional instances of behavior by Dirksen that would endanger the public:

"We've spoken about his previous convictions and everything in this case, but I would like to also highlight some things that have happened since Mr. Dirksen has been incarcerated in the Saline County Jail the past year, just over a year.

I have, according to the jail records, Mr. Dirksen has been listed as an offender in their jail reports 22 times as of February 27, meaning that while he's been at the Saline County Jail he's still breaking rules, policies, to include, I was informed that he picked up a broomstick of some sort and began swinging at a corrections officer, leading them to have to pepperball him until he complied and got back into his cell where he was then

9

forced into the hole for 90 days. That just shows that while incarcerated Mr. Dirksen is still a nuisance to the jail staff, cannot abide by rules, which I guess worries me that if he would be released on probation, we would be dealing with him again in a criminal matter, almost immediately, which is what his warrants were for in the first place when I went to arrest him on February 23rd of last year."

Chandler then told the sentencing court that Dirksen does not intend to be law abiding and mentions the handgun he possessed.

"I'd also like to point out a phone call that Mr. Dirksen made, if I can find the date. On February 3rd, Mr. Dirksen made a phone call to his parents and his children. While on the phone he told his father that he plans on receiving probation in this case and would be released as a convicted felon. He then asked his father if he would return to the —if his father would go to the police department to pick up the firearm used in this case as he was aware that as a convicted felon, he would not be able to have that firearm released to him. So, he asked his father to go do that and then return the firearm to him so he could have it, which, again, just shows that Mr. Dirksen does not plan on abiding by anything that would come with the order to release, so.

Again, that was on February 3rd, that phone call was made.

And that's, that's really all I have. I just, again, just like to reiterate the points that Deputy Morton made as well. Thank you."

*Dirksen mentions owning a handgun in his statement to the sentencing court.*

Next, the sentencing court heard statements by Dirksen's lawyer and Dirksen himself. Dirksen's lawyer argued that drug and alcohol treatment would be more helpful in treating his addiction than prison and submitted a psychological evaluation conducted by Dr. Jarrod S. Steffan. In the evaluation, the psychologist discussed these facts, including the use of a handgun during the altercation between Dirksen and Chandler. Dirksen admitted to Dr. Steffan that he possessed a handgun and accidentally discharged the handgun before fleeing on foot.

10

The mere presence of Dirksen's handgun escalated the danger of this police encounter. A gun was fired, and serious injury or loss of life could have been a result. Choosing to violently engage with a police officer while possessing a handgun makes this a violent offense. Someone could have died. It was just luck that no person was wounded by this shot.

We hold there was sufficient evidence in this record to support the court's finding, and we see no reason to reverse its finding.

*We remand to correct a lab fee order.*

The parties agree that the sentencing court imposed a lab fee to be paid by Dirksen that is greater than allowed by K.S.A. 28-176. Because Dirksen was convicted of two crimes, the maximum KBI lab fee the sentencing court could have imposed was $800. The $1,200 fee order was erroneous.

We vacate the court's lab fee order and remand to the district court to impose the correct fee of $800, unless it wishes to vacate the order entirely.

*The court should clarify its order on postrelease supervision.*

Because we are remanding this case, we ask the court to clarify its order on postrelease supervision. In the sentencing journal entry, the sentencing court imposed a 24-month period of postrelease supervision for both count 1, a severity level 5 felony, and count 2, a severity level 9 felony. According to the statute, the 24-month term would be erroneous because the severity level for count 2 only allows a term of supervision up to 12 months. See K.S.A. 22-3717(d)(1)(B), (C).

11

Any error here is harmless, however, because the total postrelease supervision term imposed by the sentencing court was 24 months. And under subsection (F) of the statute, Dirksen's total term was appropriate:

"In cases where sentences for crimes from more than one severity level have been imposed, the offender shall serve the longest period of postrelease supervision as provided by this section available for any crime upon which sentence was imposed irrespective of the severity level of the crime. Supervision periods will not aggregate." K.S.A. 22-3717(d)(1)(F).

Dirksen's sentences were for crimes with differing severity levels, so according to the statute, Dirksen must serve the longer postrelease supervision term. K.S.A. 22-3717(d)(1)(F). Because Dirksen's controlling conviction was a severity level 6 felony, the 24-month postrelease supervision term would control. So the total postrelease supervision term of 24 months was proper given the statute authorizes such a term for severity level 5 and 6 felonies.

We remand so the sentencing court can correct the journal entry and impose the proper postrelease supervision term for count 2. See *State v. Mason*, 294 Kan. 675, 679, 279 P.3d 707 (2012).

Sentence affirmed in part and vacated in part, and case remanded with directions.