No. 36,048

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHER-MAN, *Plaintiff;* GLENN TOWNSEND, Intervenor, *Appellant,* v. ELIZABETH A. ALDEN et al., *Defendants;* GEORGE E. ROFF, *Appellee.*

(148 P. 2d 509)

Opinion filed May 6, 1944.

*Elmer E. Euwer,* of Goodland, and *James E. Taylor,* of Sharon Springs, were on the briefs for the appellant.

*Frank J. Horton,* of Goodland, was on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: The question presented by this appeal is whether in the case of the sale of real estate for taxes (G. S. 1935, 79-2801 to 79-2809) the district court may refuse, upon equitable grounds, to confirm the sale even though all proceedings are found to be

regular. Asserting such power, the trial court refused to confirm. An intervenor, claiming through the purchaser at the tax sale, appeals.

Tract No. 105, covering certain lots in Goodland, Kan., and owned by Ernest Roff, had been bid in by the county at delinquent tax sale. Having been unredeemed for more than three years subsequent to such sale, action was instituted to foreclose the tax lien, personal service was had upon Roff and his wife and judgment for foreclosure of the tax lien in the sum of $364.70 and costs amounting to $15.30 was duly entered on June 8, 1942. Order of sale was duly issued and on August 31, 1942, the tract was sold at public auction to G. N. Kysar for $55, the highest bid offered. Return on the order of sale was made by the sheriff on August 4 and filed on August 8, 1942. On August 10, 1942, Roff filed a motion asking that the sale be not confirmed. Prior to hearing upon the motion and without any order from the court a sheriff's deed was issued to Kysar on August 20 and recorded on August 25.

In addition to other allegations which are not now relied upon and which need not be noted, Roff asked the court to refuse to confirm the sale "For the reason that the said George E. Roff did not know or understand the manner in which said property was being sold. That he was told and understood, that the sale of the above property meant that the same was being sold subject to all indebtedness and he would have no further liability; that later and after said sale he has learned that this is not true." He further alleged that "this property was built by the petitioner at a cost of around $3,500 and the price for which it sold, and under the conditions which it was sold was far below its real value; and the facts are that the purchaser sold the property immediately for many times the price. which was paid for the same." He offered to pay into court the amount for which the tract was sold, and "to make such other payments as are required by law in order for him to protect his interests in said property as the court may require."

Hearing upon the motion was continued from time to time. While it was pending Glenn Townsend, the appellant, filed a motion to be permitted to intervene. He set up the facts of foreclosure and public sale hereinbefore related and averred that for good and valuable consideration he had bought the tract from Kysar, receiving a deed therefor which had thereafter been duly recorded and that he had entered into possession and had continued in

actual possession. He asked that the sale be confirmed and a sheriff's deed be issued to him. In an answer to Townsend's motion Roff incorporated the averments of his motion against confirmation heretofore recited. Certain other proceedings not here material, were had.

On September 3, 1943, the court made findings of fact and entered judgment setting aside the sheriff's deed theretofore issued, refusing confirmation of the sale, ordering Townsend to deliver possession to Roff, and directing the clerk of the court to issue a new order of sale for the tract. Findings of the court pertinent to the issue presented were:

"The proceedings leading up to the judgment, the order of sale, and notice of sale by the sheriff were all legal and in conformity with the statutes of Kansas; . . . the price for which said real estate was sold is inadequate, . . . the purchasers of said sale and his assignee, Glenn Townsend, went into possession of said property and that it was taken without apparent authorization, . . . the intervenor, Glenn Townsend, went peacefully into possession with the consent of the defendant, George E. Roff, . . . the defendant, George E. Roff, was not fully aware of the nature of the proceedings instituted against him, nor of the effect of his surrender of possession of said real estate and that equity and good conscience should cause said sale to be held of no effect."

We are not advised as to the nature of the property involved. No evidence was offered as to its present value, but the trial court stated that there was some testimony that it cost about $4,000 and observed that it was "good enough to store three or four thousand bushels of wheat, barley, and other grain." However, the court also referred to it as "a white elephant" which Roff had on his hands. Said the court: "it wasn't profitable, as far as he was concerned." Apparently there was a mortgage against it of something over $1,000. Roff did not attend the sale. It was contended in Roff's behalf that he thought that if the sale were held he would be relieved of the debt secured by the mortgage. When he discovered his mistake about this he sought to prevent confirmation and to have the sale set aside.

Any question as to the deed which was issued to the sheriff without confirmation of the sale may be disposed of at the outset. Obviously it was invalid, and appellant so concedes. How it came to be issued the record does not disclose. But we are still left with the question of whether the sale should have been confirmed and a sheriff's deed ordered.

The pertinent portion of the statute relating to confirmation of sales in foreclosure of tax liens is as follows:

"The sheriff shall make return to the clerk, and the same shall as soon as practicable be examined by the Court and *if found by the court to be regular, it shall be confirmed* and the sheriff ordered to forthwith execute to the purchasers at such sale a good and sufficient deed therefor. . . ." (G. S. 1943 Supp. 79-2804.)

In its terms the statute is unequivocal. If the sheriff's return shows the proceedings to have been regular—and in this case the court so found—the sale "shall be confirmed." If the court had any discretion in the matter, if it had any power to exercise an equity jurisdiction under such circumstances, such authority must be read into the statute by reference to other provisions of the law, or upon some broad theory of inherent judicial power.

Although the appellee does not cite them, we are faced at the outset with one or two somewhat recent decisions of this court which require attention.

The case of *Atchison County Comm'rs v. Wright,* 151 Kan. 325, 99 P. 2d 857, is directly in point. In that case the property was said to have a value of $500 and was sold at tax sale for $13.50. Subsequent to confirmation of the sale and prior to issuance of a sheriff's deed the owner filed a motion to set aside the sale and the confirmation and offered to pay into court the amount of the judgment, with interest and costs. The motion was overruled and upon appeal we reversed the judgment and directed that the sale and order of confirmation be set aside. In the opinion the court set out 79-2804, *supra,* and followed it with this comment:

"Appellee contends that under this statute, where the proceedings are regular, the court is not vested with discretion to set aside a sale and the confirmation of the sale. We have ruled otherwise. In *Isenhart v. Powers,* 135 Kan. 111, 9 P. 2d 988, it was held that it was not an abuse of discretion in the trial court in a tax foreclosure action to set aside a sale and confirmation of sale of a lot left in the sale list by mistake. In that case the court had under consideration the provisions of 79-2804. The court considered the spirit as well as the letter of the statute." (p. 326.)

This was followed with comment, to the effect that the purpose of the statutes for enforcement of liens on real estate for delinquent taxes is "to secure the payment of the taxes, and not to sell the man's home." Clearly if this decision be followed the instant judgment would have to be affirmed unless it be upon some theory—not here advanced—of abuse of discretion. On the authority of the

Wright case we think the trial court was justified in exercising power to refuse confirmation. But in view of the importance of the question and its far-reaching effect upon the tax foreclosure statutes we have reëxamined the issue.

In the first place we take note of *Isenhart v. Powers,* upon the authority of which the decision in the Wright case was specifically based. Upon reëxamination it does not appear quite so controlling. In the Isenhart case it was held that it was "not an abuse of discretion for the trial court in a tax foreclosure case under R. S. 79-2801 to 79-2804 to sustain the motion of the county attorney representing the plaintiff board of county commissioners to set aside the sale and confirmation of sale of a certain lot *left in the sale list by mistake* after a promise by the county attorney to eliminate it, even if the taxes were not paid by the lot owner before the day of sale, but were paid before the ruling on the motion to set the sale and confirmation aside." (Syl. ¶ 1.) (Italics supplied.) That was quite a different situation from the one existing either in the Wright case or in the instant one. We need not here discuss the question of the power of the county attorney to make such a promise as the one referred to nor other aspects of the case. In any event the owner had reason to believe that the property was not included in the sale and in reliance upon official assurance to that effect did not attend the sale. Certainly it might be argued that irregularity prior to the sale was made to appear. But we need not labor the point and for present purposes shall assume that the Isenhart case was authority for the decision in the Wright case.

Before proceeding further it is important to note the significant difference between the statute under scrutiny relating to delinquent tax sales (79-2804) and the corresponding provision of the code of civil procedure with reference to confirmation, generally, of judicial sales. The pertinent portion of the code provision is as follows:

"The sheriff shall at once make a return of all sales made under this act to the Court, and the Court, if it finds the proceedings regular and *in conformity with law and equity,* shall confirm the same." (G. S. 1935, 60-3463.)

The difference between the two statutes is apparent. Under the code provision confirmation is had when the court finds the proceedings "regular and in conformity with law *and equity*" (Italics supplied). The tax statute contains no such provision. It follows that our cases upholding the exercise of discretion and the application of equity considerations under the code statute clearly are not in point

here. In addition to that, there are other persuasive reasons why the code provision cannot properly be read into the tax foreclosure statute.

In the first place, the methods prescribed for the recovery of delinquent taxes are wholly statutory, no methods exist apart from the statute, and whatever procedures, whatever remedies are available are to be found in the tax statutes. (*Ness County v. Light & Ice Co.*, 110 Kan. 501, 204 Pac. 536; *Sarver v. Sarver Oil Co.*, 141 Kan. 246, 248, 40 P. 2d 394; *Cunningham v. Blythe*, 155 Kan. 689, 695, 127 P. 2d 489; *Mitchell County Comm'rs v. Allen*, 156 Kan. 701, 706, 137 P. 2d 143.)

In the second place, it is an elementary rule of statutory construction that the terms of a statute dealing with a specific subject are controlling as against divergent provisions of a statute having general application. (*Greeley County v. Davis*, 99 Kan. 1, 160 Pac. 984; *State v. Curtis*, 143 Kan. 984, 987, 57 P. 2d 22; *Smith v. Henry*, 155 Kan. 283, 287, 124 P. 2d 448.) In 1941 the legislature enacted a general and comprehensive revision of the statutes with reference to the sale of real estate for taxes (Laws 1941, ch. 375). Section 79-2804 is part of that revision and must be given controlling force.

· In the third place, there are various important distinctions between judicial sales under the civil code and delinquent tax sales. For instance, sales under the civil code involve a debtor and creditor relationship of some sort—mortgage foreclosure, execution sales, etc. Taxes, on the other hand, are not classed as debts in the usual sense of the term, and actions prescribed by the civil code do not lie for their recovery. (*Comm'rs of Stafford Co. v. First Natl. Bank*, 48 Kan. 561, 30 Pac. 22; *Davidson v. Cattle Co.*, 76 Kan. 462, 92 Pac. 705; *Rogers v. Johnson*, 138 Kan. 39, 41, 23 P. 2d 586; *Sarver v. Sarver Oil Co.*, supra, p. 248.) Again, in a tax foreclosure sale the county cannot take a deficiency judgment. The proceeding is against the property, it is an action in rem. (*Ness County v. Light & Ice Co.*, supra; *Atchison County v. Challis*, 65 Kan. 179, 181, 69 Pac. 173; *Montgomery County v. Wilmot*, 114 Kan. 819, 824, 221 Pac. 276.) Again, the general redemption statutes do not apply as against the holder of a tax deed. (*Davidson v. Cattle Co.*, supra; *Rogers v. Johnson*, supra.)

The tax foreclosure statutes provide in detail both the methods of collecting delinquent taxes and the remedies available to owners. It has been said that an action to foreclose a tax lien is "a suit

by the sovereign for the appropriation of the private property of an individual and presents all the harsh features of a forfeiture." (*Montgomery County v. Wilmot,* supra, 824.) Our statute, however, has many liberal provisions for protecting the rights of delinquent owners—provisions as to notice, public sale, right of redemption, etc. Action to collect cannot be begun until at least three years after the property is bid in by the county, and an ample period is provided before the sale can be held. These and the other provisions can hardly be said to be harsh. In any event they provide the remedies which the legislature has established. Such remedies being specific and complete, there is no occasion or authority for resorting to a court of equity. (61 C. J. 1043; *Corbin v. Young,* 24 Kan. 198, 201; *Trust Co. v. Essex,* 74 Kan. 240, 242, 86 Pac. 467; *Crawford County Comm'rs v. Kurent,* 138 Kan. 556, 27 P. 2d 226.) Nor does the fact that the doctrine of *caveat emptor* applies to a purchaser at tax sale (*Isenhart v. Powers,* supra) in any way modify that rule. While the purchaser takes the property subject to any existing impairment of title, he does not assume a risk that rights arising out of the foreclosure statute will be denied him.

The construction which has been given to the code provision relative to judicial sales further fortifies the view that equity powers cannot be read into the tax foreclosure statute. As heretofore noted, the present code provision (60-3463, *supra*) calls for confirmation when the proceedings are found to be "regular and in conformity with *law* and *equity.*" But the code provision did not always contain the word "equity." Prior to 1893 when the section was amended to include equity considerations the statute required confirmation when the sale had in all respects been had "in conformity to the provisions of this article." (*Bank v. Murray,* 84 Kan. 524, 114 Pac. 827.) Although equity principles are especially applicable to a statute dealing with debtor and creditor relationships, the code provision, prior to 1893, was generally construed as requiring confirmation when the proceedings had been regular. (*Cowdin v. Cowdin,* 31 Kan. 528, 3 Pac. 369; *Adams v. Devalley,* 40 Kan. 486, 20 Pac. 239.) Such discretion as was permitted in some cases, based on extrinsic circumstances, can hardly be said to be a departure from the rule. In *Dewey v. Linscott,* 20 Kan. 684, where it may be contended that the rule was not strictly followed, it was said: "mere inadequacy of price is not sufficient cause for setting aside the sale . . . unless the in-

adequacy is so great as to be *evidence of fraud or unfairness in the sale."* (Italics supplied.)

This difference between the original and the present code provisions was commented upon in *Pool v. Gates,* 119 Kan. 621, 240 Pac. 580, where the court said:

"Under our old code (Gen. Stat. 1868, ch. 80, § 458) it was the duty of the Court to confirm a sale when the proceedings were found to be regular (*Adams v. Devalley,* 40 Kan. 486, 20 Pac. 239), but under our present code, R. S. 60-3463, the Court is required to confirm the sale if it finds the proceedings regular and in conformity with law *and equity.* [Italics supplied.] Hence equitable matters as distinct from legal questions as to the regularity of the sale may be considered by the Court in passing upon a motion to confirm a sale." (p. 625.)

Reasons for strictly construing a general code provision apply with still greater force to a statute dealing only with delinquent taxes.

The instant sale was set aside for the principal reason that the owner had mistakenly believed that the sale would relieve him of a personal debt secured by mortgage on the property. If this be permitted where is the limit upon invalidation of tax sales? However much courts may regret the situation of tax delinquents who have failed to redeem under the liberal provisions of the law, they are also guardians of the legislative intent. The public interest is directly involved. However burdensome taxes may be, at times, government cannot be maintained without collecting them. To set aside a tax sale upon some subsequent showing that the owner did not understand his rights, or for any other such reason, is to introduce uncertainty into the law, to discourage bidding and to reduce, inevitably, the total amount of taxes recovered. Both the county and the purchaser are entitled to rely upon the terms of the statute. In any event, if the statute is to be broadened that should be left to the legislature.

We conclude that general equity principles may not be invoked to refuse confirmation and invalidate a tax sale shown to have been fairly held, with no element of fraud, and in every way regular under the statute. Insofar as the Wright case, *supra,* or any other case supports a contrary view, such holding is hereby overruled.

The judgment is reversed with directions to confirm the sale and order deed to purchaser.

HARVEY, J., dissents.