NOT DESIGNATED FOR PUBLICATION

No. 126,910

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BOARD OF CRAWFORD COUNTY COMMISSIONERS,
*Appellee*,

v.

THOMAS L. CLELLAND,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; FRED W. JOHNSON JR., judge. Submitted without oral argument. Opinion filed July 18, 2025. Affirmed.

*Thomas Lee Clelland*, appellant pro se.

*James L. Emerson*, county counselor, for appellee Board of Crawford County Commissioners.

Before PICKERING, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Thomas L. Clelland appeals from the district court's denial of his motion to vacate the sale of his property in this tax lien foreclosure case. Clelland argues the relief he requested was warranted because numerous jurisdictional and procedural deficiencies, as well as fraudulent acts perpetrated throughout the course of the foreclosure proceeding, rendered the sale unlawful. We have carefully analyzed Clelland's claims in conjunction with a thorough review of the record and are satisfied the motion to vacate was properly denied. Accordingly, the decision of the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, the Board of County Commissioners of Crawford County (the Board) instituted an action for judicial foreclosure of a tax lien against a property Larry Clelland owned in Pittsburg, Kansas. The Board asserted that Larry failed to pay property taxes, specifically alleging he owed $7,550.36 in unpaid taxes, charges, interest, and penalties on the property.

Larry passed away in 2017, and the property at issue transferred by intestate succession to his son, Thomas Clelland. In an affidavit filed with the Crawford County Register of Deeds, Clelland asserted that as Larry's sole living beneficiary and named heir, he had a right to ownership of the decedent's real property. In 2019, Clelland was personally served with a summons in the foreclosure action and accepted service on behalf of Larry.

The matter went to trial in 2021 but despite having received personal service, Clelland did not appear. The district court determined that based upon the evidence, the Board properly had a lien against the property for unpaid taxes, charges, penalties, and court costs. It ordered that the property be sold at a sheriff's sale to recover the arrearages and its associated expenses, with any excess proceeds paid to Clelland.

A notice of sale appeared in The Morning Sun, a weekly newspaper of general circulation in Crawford County, for three consecutive weeks in August and September 2021. The sale proceeded at the time and place identified in that notice and Bob Offutt successfully bid $8,100 for the Clelland property.

Clelland filed a motion to vacate the tax sale asserting various grounds for relief. The district court held a pretrial conference to lay the groundwork for resolution of the motion, but Clelland neglected to appear. Even so, the district court accepted stipulated

facts based on admissions contained within the parties' respective filings, including that while Clelland could properly claim an interest in the property, he had not paid taxes under protest or filed a valuation appeal since the property was found to be subject to judicial foreclosure.

The district court ultimately denied Clelland's motion, noting that he failed to rebut the prima facie evidence of the regularity of the judicial foreclosure and sale as provided by K.S.A. 79-2804. In explaining its ruling, the district court first clarified that K.S.A. 79-2801 properly vested it with subject matter jurisdiction over the property, that Clelland received personal service, and he accepted residential service on behalf of his deceased father, Larry. The district court noted that since a judicial foreclosure action is an in rem proceeding against real property, Larry's death did not cast a pall over the court's jurisdiction. Thus, Clelland's varied challenges to jurisdiction, the propriety of service, and sufficiency of notice were without merit. Clelland's claim that his post-sheriff's sale redemption rights were violated also did not demand relief in the eyes of the district court because no such rights exist in a judicial foreclosure action. Finally, the district court concluded that due to Clelland's failure to exhaust his administrative remedies, it lacked jurisdiction to consider any contention that he was overtaxed, assessed taxes for nonexistent property, and/or taxed differently than other property owners.

Clelland now brings his case before this court for analysis and determination of whether the district court erred in denying his motion to vacate the tax sale.

LEGAL ANALYSIS

Clelland submitted an appellate brief which outlined nine separate claims of error that he contends demonstrate that the district court's denial of his motion should be reversed. For reasons discussed in greater detail below, not every issue raised by Clelland

is properly before us for review. Therefore, those claims with procedural deficiencies will not be considered in our overall analysis of the district court's decision.

I. *A pro se appellant is required to follow the same appellate procedures and standards as a licensed attorney.*

Before outlining the facts and delving into the issues Clelland raised for our consideration, it is necessary to make some preliminary observations concerning the rules that guide appellate briefing. As a panel of this court previously noted: "A party untrained in the law takes considerable risk in attempting self-representation because failing to comply with court rules or failing to appreciate standards of review and other legal principles can hamper and often derail an argument." *In re Marriage of Smith and Lohman*, No. 105,142, 2011 WL 5526565, at *1 (Kan. App. 2011) (unpublished opinion). We acknowledge that courts construe pleadings of pro se litigants liberally so that their substance controls over their labels. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022). But this rule does not insulate these individuals from the application of procedural requirements. *In re Estate of Broderick*, 34 Kan. App. 2d 695, 701, 125 P.3d 564 (2005).

Our ability to review Clelland's claims is significantly hampered by his failure to comply with Kansas Supreme Court Rule 6.02 (2025 Kan. S. Ct. R. at 35). To begin, Rule 6.02(a)(4) (2025 Kan. S. Ct. R. at 36) requires an appellant's brief to contain a statement of facts "keyed to the record on appeal by volume and page number." By contrast, throughout the statement of facts and at the outset of each issue, Clelland merely cites broad sections of the record, for example, pages "276-294" or "187-270" of a particular volume instead of individually linking his assertions to the record through identification of the specific volume and precise page number where that information can be located as required by the rule. Any material statement lacking these identifying

characteristics "'may be presumed to be without support in the record.'" *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 623, 244 P.3d 642 (2010).

Next, Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires an appellant to include the "arguments and authorities relied on" in their appellate brief. Past courts have made clear that an appellant is not in compliance with this rule when he or she fails to cite relevant legal authority or merely raises a point incidentally rather than engage in substantial analysis. *State v. Clay*, 300 Kan. 401, 416, 329 P.3d 484 (2014). Failure to comply with this rule results in abandonment of the claims raised on appeal. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). A portion of the issues Clelland raises also fall short of meeting this standard. Much of the legal authority he references takes the form of quotes with minimal, if any, clarification as to their source or the context in which the highlighted statement was made by the deciding court. Clelland does make note of particular cases at various points throughout his brief, but he simply references the case by name and neglects to identify any criteria for the resource where it can be found, thereby compromising our ability to review those authorities and properly analyze his claims.

The Kansas Supreme Court has held that Rule 6.02(a)(5) is to be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). An appellant who fails to comply with this rule risks a determination that the issue is improperly briefed and, therefore, waived and abandoned. See *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014). While we are mindful of the difficulties faced by a pro se litigant, we must scrupulously honor our duty to remain impartial and not take up the reins to assist those individuals in fleshing out their challenge to a ruling made by the district court. *In re Marriage of McMorris v. Hoostal*, No. 97,827, 2007 WL 4578004, at * 1 (Kan. App. 2007) (unpublished opinion) (Appellate courts have a duty to remain impartial and not advocate on behalf of a pro se litigant in reviewing challenged rulings of the district court.). Thus, while we should give arguments a broad interpretation when they are

properly raised, we are not free to bolster arguments that are inadequately briefed. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, Syl. ¶ 6, 416 P.3d 999 (2018) (holding that a point raised without pertinent authority or without analysis explaining why it is sound despite a lack of supporting authority is inadequately briefed and thus abandoned). To do otherwise is to risk stepping into the shoes of the party before us, which we are expressly prohibited from doing. "'A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se.'" *Joritz*, 61 Kan. App. 2d at 498 (quoting *In re Estate of Broderick*, 34 Kan. App. 2d at 701).

A fair reading of Clelland's brief leads to the conclusion that six of the nine issues he asked us to resolve are not properly before us for review as they fail to satisfy the standards dictated by Supreme Court Rules 6.02(a)(4) and (a)(5). Clelland's three remaining issues will be addressed in turn.

II. *A judicial foreclosure action is not the appropriate proceeding in which to challenge alleged valuation errors.*

In this first claim, Clelland contends that the district court erred in finding that it lacked jurisdiction to address his claims that his property tax assessment was inaccurate and his tax payment history was flawed.

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 165, 210 P.3d 105 (2009). Whether a party has failed to exhaust administrative remedies likewise presents a question of law over which we exercise unlimited review. *Miller v. Kansas Dept. of S.R.S.*, 275 Kan. 349, 353, 64 P.3d 395 (2003).

Key to our resolution of this issue is the finding by the Kansas Supreme Court that questions arising "[i]n the realm of taxes, matters of assessment, exemption, equalization,

and valuation" present questions that are properly classified as "administrative." *Dean v. State*, 250 Kan. 417, 421, 826 P.2d 1372 (1992). The Legislature has established two possible avenues of relief for taxpayers who, like Clelland, wish to contest issues related to these administrative categories. First, a taxpayer may appeal the valuation to the county appraiser within 30 days of the mailing of the valuation notice as provided in K.S.A. 79-1448. If the taxpayer is aggrieved by the outcome of an informal meeting with the county appraiser, they may appeal that determination to either a hearing officer or panel as provided in K.S.A. 79-1611, or to the small claims and expedited hearings division of the Board of Tax Appeals (BOTA) according to K.S.A. 79-1448. To the extent the final determination of either a hearing officer or panel fails to provide the taxpayer with a satisfactory resolution of their claim, the taxpayer may appeal to BOTA. K.S.A. 79-1448.

The second legislatively enacted option for relief requires the taxpayer to pay their taxes and file a written protest with the county treasurer at the time of payment to protect their right to a refund of the taxes. K.S.A. 79-2005(a). Within 30 days of the results of an informal meeting with the county appraiser, the taxpayer may then appeal to BOTA. K.S.A. 79-2005(g).

By contrast, again, in a tax foreclosure action under K.S.A. 79-2801, the district court *only* determines "the amount of taxes, charges, interest and penalties chargeable to each particular tract, lot or piece of real estate, the name of the owner or party having any interest therein" and then enters an order for the public sale of that real estate to satisfy the resulting lien. K.S.A. 79-2801(a). Accordingly, the district court does not have the latitude, or jurisdiction, to conduct a judicial review of a taxpayer's challenge concerning any of the administrative issues outlined above until that individual has first pursued the remedies which are statutorily provided for. *J. Enterprises, Inc. v. Board of Harvey County Comm'rs*, 253 Kan. 552, 555, 857 P.2d 666 (1993).

Clelland attempted to raise a valuation challenge before the district court as his first step toward relief. Specifically, his property tax assessment and the documentation outlining his payment history and arrearages were not accurate. These contentions prompted a finding by the district court that judicial foreclosure proceedings are not the appropriate forum in which to resolve such issues; thus, it did not have jurisdiction to address the merits of Clelland's assertions. The judge explained that the statutory procedure which governs the resolution of those issues requires Clelland to first pay the taxes under protest and redeem the property, then pursue the appropriate tax protest mechanism. That is, it was only after Clelland demonstrated that those administrative remedies were exhausted, or that he satisfied each of those steps, that the district court would be properly situated to review his claims.

Clelland's argument on appeal is that the district court applied the wrong analysis because pursuant to K.S.A. 79-2801(a), the district court was free to consider any type of evidence which tended to indicate that Clelland's foreclosure proceedings and the corresponding sale of his property conflicted with established evidence concerning valuation. The foundation for Clelland's assertion is formulated from language he extracted from that provision which states that the district court may "determine the amount of taxes, charges, interest and penalties chargeable to each particular tract, lot or piece of real estate." K.S.A. 79-2801(a). It is essentially Clelland's position that until the district court analyzed all available evidence which touched upon the property tax assessment and his tax payment history it could not make a valid, adequately informed decision regarding foreclosure.

A similar argument was previously rejected by this court in *Board of Harvey County Comm'rs v. Wheatridge Second*, No. 112,072, 2015 WL 4094306 (Kan. App. 2015) (unpublished opinion). In that case, Wheatridge argued that in order for the district court to successfully fulfill its obligation to investigate and decide the amount of taxes legally assessed, as required by K.S.A. 79-2803, it was critical for the district court to

8

first ensure that a correct valuation of the properties at issue was established for several preceding tax years. 2015 WL 4094306, at *3. This court was not persuaded and concluded that Wheatridge "fail[ed] to recognize its obligation to both exhaust its administrative remedies and appeal any grievances" to BOTA. 2015 WL 4094306, at *4.

Both the *Wheatridge Second* court and the district court here relied on *Board of Osage County Comm'rs v. Schmidt*, 12 Kan. App. 2d 812, 758 P.2d 254 (1988), as the legal foundation for their respective conclusions. *Wheatridge Second*, 2015 WL 4094306, at *3. *Schmidt* reiterates the "'well-recognized rule'" that when taxpayers faced with a foreclosure action also have claims which concern the valuation or assessment of their property, the "full" remedy available to them for resolving the issue is set out under K.S.A. 79-2005. 12 Kan. App. 2d at 813-14. The *Schmidt* court, consistent with what is now K.S.A. 79-2005(a) and (d), explained that the first step of this remedy demands payment of the taxes under protest, followed by a written statement from the taxpayer to the county treasurer that specifies the grounds or details of the taxpayer's protest and the exact portion of their taxes that they contest, as well as the precise valuation or assessment the taxpayer admits is valid. 12 Kan. App. 2d at 813-14. The county treasurer then forwards a copy of this written statement of protest to the county appraiser, who will schedule an informal meeting. If the taxpayer is not satisfied with the results of the informal meeting, he or she must—within 30 days—appeal to BOTA. K.S.A. 79-2005(a), (g).

BOTA is the paramount taxing authority in this state and as such, tax questions such as those raised by Clelland must be decided in the first instance by that agency. See *J. Enterprises, Inc.*, 253 Kan. at 555. Accordingly, we are likewise persuaded that *Schmidt* guides the outcome of this issue. Thus, "'where a full and adequate administrative remedy is provided in tax matters by statute, such remedy must ordinarily be exhausted before a litigant may resort to the courts.'" 253 Kan. at 561 (quoting *State ex rel. Smith v. Miller*, 239 Kan. 187, Syl. ¶ 1, 718 P.2d 1298 [1986]).

Clelland has not alleged that he has even pursued any administrative remedies in this matter, let alone exhausted them. Accordingly, the district court properly concluded that it lacked jurisdiction to consider Clelland's valuation related claims.

III. *The district court did not err in determining that the foreclosure action against Clelland's property was an in rem proceeding.*

The next claim of error we must resolve arises out of Clelland's contention that the judicial foreclosure hearing resulted in an entry of judgment against him and Larry personally; thus, the district court's designation of the matter as solely an in rem proceeding was incorrect. Jurisdictional inquiries raise questions of law over which we exercise unlimited review. *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637, 270 P.3d 1074 (2011).

Clelland directs our attention to the United States Supreme Court's opinion in *Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977), to buttress his claim for relief. He offers a quote from a passage that he attributes to the Court but the citation he provides in support thereof fails to lead us to any such language. Nevertheless, the principle Clelland intends to convey is that "the court has long acknowledged that an adverse judgment 'In Rem' directly effects [*sic*] the property owners by divesting him of his rights in the property."

The language isolated by Clelland was taken out of context as *Shaffer* does not bear on the issue Clelland has asked us to resolve. Rather, the *Shaffer* Court analyzed the degree of contact that nonresident corporate officers and directors must have with a state in order for that state to exercise jurisdiction over those individuals and seize their corporate holdings in connection with a private antitrust suit. *Shaffer* is too far afield to inform our decision here.

10

Clelland's reliance on *Shaffer* reflects a fundamental misunderstanding of the distinguishing characteristics between various legal procedures. As the Kansas Supreme Court previously clarified, "'G.S. 1941 Supp. 79-2801 et seq. since amended, is a complete and independent code for the collection of taxes'" levied against real estate, and one which demands its own distinct judicial proceeding, involving its own unique procedures and limitations, and "'a tax foreclosure action instituted thereunder is a proceeding *in rem*.'" *Board of County Commissioners v. Matlock*, 192 Kan. 272, 273, 387 P.2d 211 (1963). Additional insight can be gleaned from *Sherman County Comm'rs v. Alden*, 158 Kan. 487, 492-93, 148 P.2d 509 (1944), in which the court explained the distinctions between judicial sales under the civil code and delinquent tax sales. That is, sales under the civil code involve a debtor and creditor relationship of some sort, whereas tax matters are not classified as debts in the typical sense, so the recovery mechanisms outlined by the civil code do not apply. A county cannot take a deficiency judgment in a tax foreclosure sale because the proceeding is against the property, it is an action in rem. 158 Kan. at 492. Accordingly, we identify no error in the district court's designation of Clelland's judicial foreclosure matter as an in rem proceeding.

Clelland also asserts that even if his argument fails and the issue is properly classified as in rem, he was still entitled to due process, the least of which required that he receive proper notice concerning the date and time of the property sale. We agree that a judicial foreclosure action does not require an involved party to dispense with their due process protections. "The requirements of due process contemplate that, where feasible, notice of legal proceedings be given by means reasonably calculated to inform all parties having legal rights which might be directly and adversely affected thereby." *Pierce v. Board of County Commissioners*, 200 Kan. 74, Syl. ¶ 5, 434 P.2d 858 (1967).

The record before us reflects that the Board, as required by K.S.A. 79-2801(a), named "the owners or supposed owners of the real estate and all persons having or claiming to have any interest therein or thereto" in its petition at the outset of this

litigation. Thus, at the time of Larry's death, Clelland was already a party to the action, as someone with an interest in the subject property. "After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties." K.S.A. 2023 Supp. 60-225(a)(2). The record on appeal additionally discloses that as a direct result of Clelland's status as a party to the action, a Crawford County Sheriff's Deputy executed personal service of the summons and amended petition to Clelland at his residence. Receipt of a copy of the amended petition will suffice when the amended pleading arose out of the same occurrence set forth in the original pleading and service is timely; service of the original pleading is not required. See *Housh v. Hay*, 35 Kan. App. 2d 100, 106, 128 P.3d 409 (2006). "Requiring the plaintiffs to serve the original petition in addition to the amended petition would have been confusing and duplicative. The purpose of the service of process statutes had been satisfied with the service of the amended petition." 35 Kan. App. 2d at 106.

Clelland received actual notice as required by law. Neither the sheriff, county attorney, treasurer, nor clerk of the district court had a duty to provide any additional notice. Accordingly, we are satisfied that Clelland's rights were honored and that he received all of the process to which he was due.

IV. *Administrative Order 2020-PR-047 did not toll the redemption deadline.*

Finally, Clelland asks us to determine whether the district court failed to observe Kansas Supreme Court Administrative Order 2020-PR-047, effective May 1, 2020, that was issued by the Chief Justice of the Kansas Supreme Court to address the COVID-19 pandemic. Clelland argues that the order tolled the deadline for the exercise of his redemption rights and thereby prevented execution of the tax sale involving his property. Although Clelland did not raise this issue before the district court, we may exercise our discretion to resolve unpreserved claims for the first time on appeal. See *State v. Rhoiney*,

314 Kan. 497, 500, 501 P.3d 368 (2021) (recognizing exceptions under which the appellate court has prudential authority to review unpreserved claims, including when "the new claim raises only a question of law based on uncontested facts").

The first paragraph of the COVID-19 Administrative Order states:

"All statutes of limitation and statutory time standards or deadlines applying to the conduct or processing of judicial proceedings are suspended until further order or the termination of this order under the terms of H. Sub. for S.B. 102." Paragraph (1) of Order 2020-PR-047.

The order also allows for an exemption from its operation under narrow circumstances:

"Except as to a statute of limitation or any proceeding covered by Governor Laura Kelly's Executive Order No. 20-10 temporarily prohibiting certain foreclosures and evictions, any district court judge, appellate judicial officer, or hearing officer may exempt a case from the suspension of a statutory or other deadline by (a) entering an order in a case or issuing a notice of hearing that imposes a deadline or time requirement and (b) specifically stating that the deadline or time requirement is not subject to the suspension of time in this order." Paragraph (3) of Order 2020-PR-047.

Clelland relies on *Unified Gov't of Wyandotte Co./KCK v. Hulse*, No. 124,153, 2023 WL 3028179 (Kan. App. 2023) (unpublished opinion), where a panel of this court was called upon to analyze a claim nearly identical to that which Clelland now raises. The *Hulse* panel reviewed the matter independently, with no deference to the district court's conclusion, and exercised unlimited review over the interpretation of statutes and administrative orders. It ultimately concluded that Administrative Order 2020-PR-047 tolled the redemption deadline in the judicial foreclosure action that occurred in that case. And, since the district court in *Hulse* did not make any overtures to pursue an exemption

13

that would remove the subject property from application of the Administrative Order, the property at issue was not properly subject to a tax sale in December 2020. 2023 WL 3028179, at *2-5.

Clelland's case does not demand the same outcome, however, because on April 15, 2021, Kansas Supreme Court Administrative Order 2021-PR-020, effective March 30, 2021, directed most deadlines and time limitations to resume. Exceptions to this order were limited and only included statutory speedy trial deadlines under K.S.A. 22-3402; statutory trial and hearing deadlines under K.S.A. 22-4303; time requirements for filing actions under K.S.A. 60-1501 and 60-1507; and time requirements for a defendant's appearance in limited action cases under K.S.A. 61-3002(b). Paragraph (3) of Order 2021-PR-020. Thus, the redemption deadline in Clelland's judicial foreclosure action was not tolled at the time the tax sale involving his property occurred in September 2021.

Clelland brought this appeal because he believed the tax lien foreclosure process and resulting sale of his property were plagued with deficiencies. Following a careful review of his claims, in conjunction with the record, we are not persuaded that the foreclosure involving his property was tainted by error. Accordingly, the district court's denial of Clelland's motion to vacate the tax sale is affirmed.

Affirmed.